The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Ann Jeanette GREER, Defendant–Appellee.

No. 93SA139.

Supreme Court of Colorado, En Banc.

Nov. 1, 1993.

John Suthers, Dist. Atty., Fourth Judicial Dist., Gordon R. Denison, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, State Public Defender, Laurie L. Cole, Deputy State Public Defender, Colorado Springs, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

The prosecution brought an interlocutory appeal pursuant to C.A.R. 4.1, seeking to reverse a suppression order entered by the El Paso County District Court in the prosecution of Ann Jeanette Greer (Greer) for possession of a controlled substance (cocaine). After a hearing, the trial court concluded there was no reasonable suspicion to stop Greer and suppressed the cocaine. We affirm the trial court's ruling.

I

Colorado Springs Police Officer Matt Harrell was on duty on December 8, 1992. He was on the roof of the Cloud Nine Bar watching the parking lot and looking for narcotics sales. This location was selected because the Cloud Nine Bar is infamous and well known for narcotic sales. Officer Harrell had made arrests at the Cloud Nine Bar on prior occasions.

While on the roof, Officer Harrell saw Greer get out of a car that had just pulled into the parking lot adjacent to the Cloud Nine Bar. As Greer stood by the car, three men approached her. One of the men stood face to face with Greer while the other two men stood to the side. Officer Harrell could see Greer's face, but his view of her body and hands was totally obscured by the back of the man who was facing Greer. Officer Harrell testified that it looked as if Greer was having a conversation with the man who was facing her, but because of his position he could not hear anything that was said. At one point, while Greer was facing the man, Officer Harrell saw Greer bend her left elbow upward. As the man facing Greer turned around to leave, Officer Harrell saw him put currency, consisting of a single bill of unknown denomination, into his pocket. Officer Harrell did not see any exchange take place and could not see if Greer had given the currency to the man. After the men left, Greer got back into the vehicle that brought her to the parking lot and left the scene.

Officer Harrell concluded from what he had observed that a drug deal had just taken place. He based his conclusion on his thirteen years of experience as a police officer; the "unusual" conduct of the parties including the fact that neither Greer nor the men she met came from, or went into, the establishment; the arm movements of Greer; the currency in the hands of the man when he turned around; and the fact that the Cloud Nine Bar was infamous for narcotic sales. As the result of his observations, Officer Harrell radioed nearby uniformed police officers and told them to stop the vehicle Greer had entered at the parking lot. The officers contacted by Officer Harrell stopped the car, searched Greer, and found cocaine.

## II

■ In the absence of a clear statement that a suppression ruling is grounded on the Colorado Constitution, as opposed to the United States Constitution, we presume that a trial court relied on federal constitutional law in reaching its decision. *People v. McKinstrey*, 852 P.2d 467, 469 (Colo. 1993); *People v. Inman*, 765 P.2d 577, 578 (Colo.1988). Therefore, the sole issue in this interlocutory appeal is whether the Fourth Amendment requires suppression of the evidence.

The only evidence presented at the suppression hearing was the testimony of Officer Harrell. The prosecution asserts the testimony was sufficient to prove that the officer had a reasonably articulable suspicion to believe a drug transaction had occurred. We disagree.

## A

■ The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. *See, e.g., Minnesota v. Dickerson*, —— U.S. ——, ——, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). A warrantless search and seizure is unreasonable unless it is justified by one of the few, specifically established exceptions to the Warrant Clause of the Fourth Amendment. One exception was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which permits a warrantless stop on the basis of reasonable suspicion, rather than probable cause. The prosecution relies on the exception set out in *Terry* to justify the stop of Greer.

■ The exception delineated in *Terry*, and clarified in subsequent cases, is that a police officer can briefly stop a suspicious person and make reasonable inquiries to confirm or dispel his suspicions.[1] *Id.* at 30–31, 88 S.Ct. at 1884–85. Three conditions must be met before a person may be subject to an investigatory stop: (1) there must be a specific and articulable basis in fact for suspecting criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Corpany*, 859 P.2d 865, 869 n. 10 (Colo.1993); *People v. Lingo*, 806 P.2d 949, 952 (Colo. 1991); *People v. Martinez*, 801 P.2d 542, 544 (Colo.1990). Only the first condition is at issue in this appeal.

■ To determine whether an investigatory stop was based upon a reasonable and articulable suspicion and constitutionally permissible, a trial court must consider the facts and circumstances known to the officer at the time of the encounter. *People v. Coca*, 829 P.2d 385, 387 (Colo.1992). The facts known to the officer, taken together with rational inferences from these facts, must create a reasonable suspicion of criminal activity which justifies an intrusion into the defendant's personal privacy at the time of the stop. *People v. Rahming*, 795 P.2d 1338, 1341 (Colo.1990). The officer's unarticulated hunch that a criminal act has occurred, however, is not suffi-

---

1. Colorado has codified the right of an officer to stop a suspect without a warrant. § 16–3–103 8A C.R.S. (1986). In Colorado, an investigatory stop is sometimes referred to as a *"Stone"* stop.

*See People v. Corpany*, 859 P.2d 865, 868 n. 9 (Colo.1993) (citing *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971)).

cient to support an investigatory stop. *Coca*, 829 P.2d at 387.

## B

■ The prosecution places great emphasis on the fact that the Cloud Nine Bar has been the site of drug transactions in the past. In *Rahming*, we stated "[a] history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality." *Rahming*, 795 P.2d at 1343 (quoting *People v. Aldridge*, 35 Cal.3d 473, 198 Cal.Rptr. 538, 540, 674 P.2d 240, 242 (1984)). We have recognized that the fact an area is reputed to be a high drug trafficking area can nevertheless provide support for an officer's decision to stop an individual. *People v. Ratcliff*, 778 P.2d 1371 (Colo. 1989).

*Ratcliff* involved a police detective who drove by the Cloud Nine Bar in an unmarked vehicle. As the detective drove past, he noticed a man, Walker, who was a user and seller of cocaine, standing outside the bar. The detective also knew that Walker was the subject of an outstanding arrest warrant. The defendant, Ratcliff, came out of the bar and approached Walker who extended his closed hand out to Ratcliff. Ratcliff then put his closed hand out and the men exchanged what was in their fists. During the exchange, the men remained close to the building, as if they were attempting to shield their conduct from view. The detective made his observations from a distance of twenty to forty feet.

Walker's and Ratcliff's conduct, the officer's knowledge that Walker was a known drug user and dealer, the officer's knowledge that Walker was the subject of an arrest warrant, and the bar's reputation as a locus of drug activity, all led the detective to conclude he had witnessed a drug transaction. In applying the first condition of the three-part *Terry* test, we held the detective's observations *and* the information known to him immediately prior to the stop provided the detective with a reasonable suspicion that the defendant had engaged in a criminal act. *Ratcliff*, at 1379.

The facts in this case are distinguishable from the facts in *Ratcliff*. The officer in *Ratcliff* had a clear view of the suspects. The officer who observed Greer and the man she spoke with could not see the suspects' hands. The difference between this case and *Ratcliff* is also evinced by the fact the detective in *Ratcliff* was able to describe an exchange where the suspects, immediately upon meeting, held out their fists and then simultaneously opened them. Although the detective did not see what was exchanged, he did testify that objects were exchanged. *Id.* at 1373. In Greer's case, the only gesture the officer observed was an elbow bending and later a man putting money in his pocket. An obscured view of a person bending her arm and the subsequent act of a man putting currency in his pocket is not as suspicious as the conduct of the suspects in *Ratcliff*. In addition, the officer in *Ratcliff* observed that the suspects were attempting to shield their actions. What little of Greer's conduct the officer could see did not indicate any attempt to maintain secrecy or any fear of being observed. More important than a comparison of conduct is the fact that the officer in *Ratcliff* knew Walker was a drug dealer and user and was wanted by the police. The officer who observed Greer did not know her or any of the men with whom she met.[2]

We recognized in *Ratcliff* that the events the officer observed gave rise to a reasonable suspicion, but just barely. *Ratcliff*, 778 P.2d at 1379 (noting "the question is not free from all doubt"). Given the more extensive nature of the facts in *Ratcliff*, and the unwillingness of this court to justify a stop based solely on the reputation of

---

**2.** We recognize an officer's knowledge that one of the parties the officer observes is a drug user is not sufficient, by itself, to constitute a reasonable suspicion. *See Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968) (stating eight hours of observing a suspect having separate meetings with approximately nine known drug addicts did not justify a warrantless search of the suspect).

past criminal activity in a locality, Officer Harrell did not have a reasonable articulable suspicion to stop Greer.

### III

Under the facts of this case, the trial court's ruling that Officer Harrell did not have a reasonably articulable suspicion to believe a drug transaction had occurred is supported by the record. We affirm the suppression order and remand for further proceedings consistent with this opinion.