The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

**Rajeem Kasson CANTON,** Defendant–Appellee.

No. 97SA361.

Supreme Court of Colorado, En Banc.

Jan. 20, 1998.

Jeanne M. Smith, District Attorney, Fourth Judicial District, Chris Forsyth, Dep-

uty District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, for Plaintiff–Appellant.

Farry, Cain & Lane, L.L.P., Denis K. Lane, Jr., Colorado Springs, for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The prosecution filed this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (1997), challenging a suppression order of the El Paso County District Court in the prosecution of Rajeem Kasson Canton for possession of a controlled substance (cocaine) with intent to distribute. The trial court concluded that the police officer who detained Canton lacked reasonable suspicion to justify the stop. The trial court, therefore, suppressed the cocaine seized while Canton was detained in the officer's car. We reverse the trial court's ruling and remand the case for further proceedings.

## I.

On November 1, 1994, Officer Pete Szentmartoni of the Colorado Springs Police Department was on patrol in the area of the Cloud Nine Lounge ("Cloud Nine") in Colorado Springs, Colorado. The officer was dispatched to Cloud Nine in response to a call for service. That call resulted from an anonymous telephone call to police dispatch reporting that a large group of males were congregated outside of Cloud Nine and were possibly involved in drug trafficking.

The officer arrived at Cloud Nine at approximately 3:30 p.m. and observed approximately 10 to 15 males gathered in the front parking lot. With the exception of Canton, all of the males scattered when the officer approached. Unlike the others who were gathered, Canton apparently did not see the officer approach. As the officer got out of his car and drew nearer, he observed a roll of bills in Canton's right hand. Because Officer Szentmartoni had investigated drug activity

at Cloud Nine on previous occasions, he knew of Cloud Nine's reputation as a site for drug dealing. Thus, as a result of his present observations and his previous experiences with Cloud Nine, the officer suspected that Canton was involved in trafficking drugs.

After making initial contact with Canton, Officer Szentmartoni patted him down and placed Canton in the backseat of his patrol car. The officer then ran a check for outstanding warrants.[1] While Canton was seated in the back seat, the officer observed Canton fidgeting and reaching into his pockets, as if he were trying to place something in the back seat. When other officers arrived, Officer Szentmartoni removed Canton from the car, handcuffed him, and checked the area where Canton had been sitting. The officer recovered seven small rocks, later determined to be cocaine, from the back seat. The officer then arrested Canton for possession of a controlled substance with intent to distribute.[2]

Canton moved to suppress the cocaine pursuant to Crim.P. 41(e), on the grounds that Officer Szentmartoni lacked reasonable suspicion to justify an investigatory stop of Canton and therefore the cocaine was the product of an unreasonable search and seizure. After a hearing on the motion on September 22, 1997, the trial court made the following factual findings regarding the information known to the officer at the time of the initial contact with Canton: (1) there was an anonymous tip of possible drug dealing in the area of Cloud Nine, (2) Cloud Nine was known as a place where drug deals took place and a large number of males were gathered outside of Cloud Nine, (3) the individuals in contact with Canton or in close proximity to Canton scattered when the officer arrived, and (4) Canton was standing outside of Cloud Nine with a large amount of money in his hand.

The trial court concluded that this information was an insufficient basis for suspecting that criminal activity had taken place, was in progress, or was about to occur. Thus, the trial court ruled that Officer Szentmartoni

---

1. The prosecution contends that, because Officer Szentmartoni was alone, he did not feel safe leaving Canton outside the patrol car while the officer awaited the results of the warrant search.

2. See 18–18–405, 6 C.R.S. (1997).

lacked reasonable suspicion to conduct an investigatory stop of the defendant. The trial court granted the defendant's Motion to Suppress Evidence based on its conclusion that the cocaine was seized as a result of an unconstitutional stop. The prosecution now appeals.

## II.

The Fourth Amendment to the United States Constitution and its Colorado counterpart, *see* Colo. Const. art. II, § 7, protect against unreasonable searches and seizures. *See Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); *People v. D.F.,* 933 P.2d 9, 11 (Colo. 1997); *People v. Greer,* 860 P.2d 528, 530 (Colo.1993). A warrantless search and seizure is unreasonable unless it is justified by an established exception to the Warrant Clause of the Fourth Amendment. *See People v. H.J.,* 931 P.2d 1177, 1180 (Colo.1997); *Greer,* 860 P.2d at 530. Furthermore, an arrest must be based on probable cause to believe that the person arrested has committed a crime. *See People v. Tate,* 657 P.2d 955, 958 (Colo.1983). However, under narrowly defined circumstances, a police officer may temporarily stop a person for investigatory purposes without probable cause to support a search warrant or probable cause to arrest the person. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 508, 485 P.2d 495, 497 (1971); *see also People v. D.F.,* 933 P.2d at 11–12; *People v. H.J.,* 931 P.2d at 1180.

An investigatory stop does not offend the Fourth Amendment provided three criteria are met. First, there must be an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity has taken place, is in progress, or is about to occur. Second, the purpose of the intrusion must be reasonable. Third, the scope and character of the intru-

---

**3.** When police detain a person without a warrant, the burden of proof is on the prosecution to prove the constitutional validity of the stop and any subsequent search. *See People v. Crow,* 789 P.2d 1104, 1107 (Colo.1990).

sion must be reasonably related to its purpose. *See People v. D.F.,* 933 P.2d at 12; *Greer,* 860 P.2d at 530; *People v. Garcia,* 789 P.2d 190, 191 (Colo.1990).[3]

In this case, the prosecution appeals the trial court's conclusion that Officer Szentmartoni lacked a reasonable suspicion to justify the initial contact with the defendant. Thus, in this interlocutory appeal we address only the existence of the first criterion for an investigatory stop. The defendant contends that the trial court's ruling also addressed the final two criteria for an investigatory stop (the purpose and scope of the intrusion), and therefore this appeal raises these issues. However, a comprehensive reading of the trial court's ruling leads to the conclusion that the trial court addressed only the issue of whether reasonable suspicion existed to justify stopping the defendant. The trial court held, in part:

> Based on the evidence that has been presented, based on the law that is applicable to warrantless arrests in situations such as this, the Court would determine that reasonable inferences have been shown to justify the initial contact with the defendant— I am going to change that. I am going to say there was this initial contact, but it does not rise to the level that crime had been committed by the defendant, that the defendant was involved in criminal activity, and there was therefore no justification for placing the defendant into the police officer's vehicle.

Before reaching this conclusion, the trial court discussed *People v. Greer,* 860 P.2d 528 (Colo.1993), which was decided only on the basis of the first criterion for an investigatory stop (i.e., whether there is an articulable and specific basis in fact to suspect criminal activity). We conclude that, like *Greer,* this appeal concerns only the issue of whether Officer Szentmartoni had a reasonable suspicion to justify the stop of Canton.[4]

---

**4.** We do not address issues raised by the defendant and not resolved by the trial court in an interlocutory appeal. *See People v. Staton,* 924 P.2d 127, 133 (Colo.1996) (recognizing that interlocutory appeal by the People under C.A.R. 4.1 does not normally include issues raised by the

In determining whether Officer Szentmartoni was justified in stopping Canton, our analysis focuses on " 'whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security.' " *Garcia,* 789 P.2d at 192 (quoting *People v. Thomas,* 660 P.2d 1272, 1274 (Colo. 1983)). To answer this question, we must look to the totality of the circumstances. *See People v. D.F.,* 933 P.2d at 12; *People v. Contreras,* 780 P.2d 552, 555 (Colo.1989). After considering these circumstances, we conclude that the observations by Officer Szentmartoni and the information known to him immediately prior to the stop of the defendant, while not amounting to probable cause to arrest, did provide the officer with a reasonable suspicion that the defendant had engaged, or was about to engage in a criminal act.

In reaching its decision, the trial court below relied heavily upon our decision in *Greer. See Greer,* 860 P.2d 528. The defendant in *Greer* was stopped outside of the same establishment as the defendant in this case. In *Greer,* the officer had an obscured view of a parking lot conversation between the defendant and another party during which the defendant bent her elbow at one point and after which the other party put money in his pocket. The officer in *Greer* concluded from these observations that the parties were engaged in drug activity, and the officer subsequently detained and searched the defendant. We affirmed the trial court's suppression order in *Greer* because the police officer lacked a reasonable suspicion to believe the defendant was involved in criminal activity. *See Greer,* 860 P.2d at 532.

In this case, Officer Szentmartoni had a clear view of an assembly of a large group of males outside Cloud Nine who scattered when he arrived. The officer also observed the defendant holding a roll of bills in his hand. When considered alone, these observations may not give rise to a reasonable suspicion of criminal activity. These observations, however, took on an added significance in light of the anonymous tip that this group was possibly engaged in drug dealing, the fact that Cloud Nine was known as a site for drug transactions, and the officer's training and experience in drug enforcement. The rational inferences from these facts provided Officer Szentmartoni with a specific and articulable basis to stop and temporarily detain the defendant for investigatory purposes.

Unlike the situation in *Greer,* the officer in this case had reason to believe that the particular individuals observed were engaged in criminal activity (*i.e.,* the anonymous tip that this group was possibly involved in drug trafficking). *Cf. People v. Ratcliff,* 778 P.2d 1371, 1379 (Colo.1989) (where police knew that one of the parties under surveillance was a drug dealer, police had reason to suspect the particular parties were engaged in drug activity). We continue to recognize that an anonymous tip, by itself, lacks sufficient indicia of reliability to establish reasonable suspicion. *See People v. D.F.,* 933 P.2d at 12; *Garcia,* 789 P.2d at 192; *Contreras,* 780 P.2d at 555; *see also Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990). An anonymous tip corroborated by an officer's observations, however, may provide a specific and articulable basis in fact to suspect that an individual is engaged in criminal activity. *See People v. D.F.,* 933 P.2d at 12; *Garcia,* 789 P.2d at 192; *Contreras,* 780 P.2d at 555; *see also White,* 496 U.S. at 329, 110 S.Ct. at 2415.

"In some circumstances the verification of seemingly innocent details contained in a tip from an anonymous informant can be sufficient to supply the requisite corroboration." *Garcia,* 789 P.2d at 192. In this case, Officer Szentmartoni was able to verify the informant's claim that a large group of males were gathered outside Cloud Nine. Moreover, the fact that the group scattered when the officer arrived provided reason to believe the informant's claim that the group was possibly involved in illicit activity. *See People v. Jackson,* 742 P.2d 929, 931 (Colo.App.

defendant); *People v. Barton,* 673 P.2d 1005, 1006 n. 1 (Colo.1984) (same).

1987) (defendant's flight from police coupled with other incriminating behavior and circumstances supported officer's reasonable suspicion that defendant was connected to reported criminal activity).[5]

■ Furthermore, although a history of criminal activity in a locality does not justify suspension of the constitutional rights of anyone who may subsequently be at that locality, *see People v. Rahming,* 795 P.2d 1338, 1341 (Colo.1990), the fact that an area is reputed to be the site of drug trafficking can provide support for an officer's decision to stop an individual. *See Greer,* 860 P.2d at 531; *Ratcliff,* 778 P.2d at 1379. Thus, Officer Szentmartoni's knowledge of Cloud Nine's reputation as an area of high drug trafficking provided additional corroboration of the anonymous tip and support for his decision to stop the defendant.

The circumstances of this case provided the officer with a specific and articulable basis in fact to believe that the defendant was engaged or was about to engage in drug trafficking. Accordingly, Officer Szentmartoni's decision to stop the defendant for investigatory purposes did not violate the Fourth Amendment.

### III.

The trial court's ruling that Officer Szentmartoni lacked a reasonable suspicion to believe illegal activity had occurred or was about to occur is not supported by the record. We therefore reverse the suppression order and remand for further proceedings consistent with this opinion.

SCOTT, J., does not participate.

---

5. The reaction of these individuals to Officer Szentmartoni's arrival provides another distinction between this case and *Greer.* In *Greer,* there was no indication that the two parties were attempting to maintain secrecy or had any fear of being observed. In this case, because the individuals scattered when he approached, Officer Szentmartoni could reasonably believe that they were afraid of being observed (as if they were engaged in illegal activity).