2012 CO 8

**The PEOPLE of the State of Colorado,
Plaintiff–Appellant**

v.

**Anthony Michael REVOAL,
Defendant–Appellee.**

**No. 11SA280.**

Supreme Court of Colorado,
En Banc.

Feb. 13, 2012.

Eighteenth Judicial District, Carol Chambers, District Attorney, Andrew Cooper, Chief Deputy District Attorney, David C. Jones, Senior Deputy District Attorney, Centennial, CO, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Lindsay G. Gray, Deputy State Defender, Centennial, CO, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this interlocutory appeal, the prosecution challenges an order of the Arapahoe County District Court granting the defendant's motion to suppress evidence. The order suppressed evidence of marijuana seized from the defendant, as well as the defendant's statements to the investigating officer.[1]

¶ 2 The investigating officer initially observed the defendant, Anthony Michael Revoal, at 11:30 p.m. standing to the side of a closed sandwich shop, then walking across a parking lot to the side of a liquor store while looking left and right, as if "watching for something," which the officer considered suspicious. After continuing to observe Revoal begin to walk behind the liquor store, the officer pulled his patrol vehicle over to make contact with him. When Revoal saw the patrol vehicle, he turned and began walking away from the vehicle. Revoal complied with the officer's instructions to stop. The officer informed Revoal that he was going to frisk him and asked if Revoal had anything illegal on his person. Revoal replied, "my right

front pant pocket." The officer removed marijuana, and also found additional marijuana and a scale containing marijuana residue upon further search.

¶ 3 The trial court suppressed the marijuana evidence and Revoal's statements to police because the facts and circumstances the investigating officer knew at the time of the intrusion did not satisfy the threshold constitutional test for reasonable suspicion.

¶ 4 We affirm the suppression order. We hold that the facts and circumstances the officer knew at the time of the intrusion, viewed either individually or in conjunction with each other, did not amount under the totality of the circumstances to reasonable suspicion sufficient to justify the officer's investigatory stop of Revoal.

## I.

¶ 5 On March 26, 2011, Officer Jonathan McCants was on routine patrol in an area of Aurora, Colorado, which at the time had experienced a recent history of robberies. At approximately 11:30 p.m., McCants observed Revoal standing on the side of a closed Subway sandwich shop, looking "left to right as if he was looking for something or watching for something." McCants testified this consistent with the behavior of someone staking out a business or scanning for police. Revoal then proceeded to walk across a parking lot to stand on the side of an open liquor store and continued to look left and right. McCants then observed Revoal begin to walk behind the liquor store, where it was dark.[2] At that point, McCants pulled the patrol vehicle over and exited the vehicle to make contact. When Revoal saw the patrol car, he turned and walked in the opposite direction.

¶ 6 McCants directed Revoal to stop, come towards him, and sit on the curb; Revoal complied. Following standard procedure, McCants radioed for backup. While waiting for a cover officer to arrive, he asked Revoal what he was doing in the area; Revoal re-

---

1. The prosecution phrased the issue as follows: "The district court erred in holding that the officer lacked reasonable suspicion to stop the defendant."

2. Although the officer originally testified that there was nothing behind the liquor store except dumpsters, he corrected his testimony when shown a satellite photograph of the area that showed a gas station in that location.

sponded that he was waiting for a ride. When backup arrived, McCants informed Revoal that he was going to conduct a *Terry* frisk of his person, and asked if he had anything illegal. Revoal responded, "my right front pant pocket." McCants reached into the pocket and pulled out a plastic grocery bag, which he found contained marijuana. A more thorough search revealed another plastic bag with marijuana, and a digital scale containing marijuana residue. Revoal explained that he sold marijuana because he was out of work and needed to pay for "filings and school fees."

¶ 7 The prosecution charged Revoal with one count of possession with intent to manufacture or distribute marijuana in an amount less than five pounds.[3] Revoal moved to suppress the marijuana and scale on the grounds that the police did not have reasonable suspicion to justify the investigatory stop. Revoal also moved separately to suppress his statements to police as a violation of his *Miranda* rights. The trial court suppressed all evidence, including the marijuana and Revoal's statements, for lack of reasonable suspicion to conduct the stop.[4] We agree.

## II.

¶ 8 We hold that the facts and circumstances the officer knew at the time of the intrusion, viewed either individually or in conjunction with each other, did not amount under the totality of the circumstances to reasonable suspicion sufficient to justify the officer's investigatory stop of Revoal.

### A. Standard of Review

■■ ¶ 9 We review a trial court's suppression order with deference to the trial court's findings of historical fact and will not overturn them if supported by competent evidence in the record. *People v. Castaneda*, 249 P.3d 1119, 1122 (Colo.2011). However, whether the trial court applied the correct legal standards to the facts is a question of law we review de novo. *Id.* Our analysis is

3. § 18–18–406(6)(b)(I), (III)(A), C.R.S. (2011).

4. Because the trial court suppressed Revoal's statements as "fruit of the poisonous tree" from

"not constricted by only those facts that were the subject of the trial court's order; we also consider the undisputed facts evident in the record." *People v. Elmarr*, 181 P.3d 1157, 1161 (Colo.2008). We apply a totality of the circumstances standard to suppression-order cases. *People v. Canton*, 951 P.2d 907, 910 (Colo.1998).

### B. Applicable Law

■■ ¶ 10 The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of people to be secure ... against unreasonable searches and seizures, shall not be violated."); Colo. Const. art. II, § 7 ("The people shall be secure ... from unreasonable searches and seizures."); *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A warrantless search and seizure is unreasonable unless it is justified by one of the few, specifically established exceptions to the Warrant Clause of the Fourth Amendment. *People v. Greer*, 860 P.2d 528, 530 (Colo.1993). A warrantless, investigatory stop is permitted if three conditions are met:

(1) the officer must have a reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose.

*People v. Padgett*, 932 P.2d 810, 814–15 (Colo.1997) (internal quotations omitted). Only the first condition is at issue here.

■ ¶ 11 In determining whether an investigatory stop is valid, a court must take into account the facts and circumstances known to the officer at the time of the intrusion. *Id.* at 815. In order to justify an investigatory stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88

the improper investigatory stop, it found that Revoal's separate motion to suppress statements was moot.

S.Ct. 1868. The officer's "unarticulated hunch" that a criminal act has occurred is not sufficient. *Greer*, 860 P.2d at 530.

### C. Application to This Case

■ ¶ 12 Here, the facts and circumstances the police knew at the time of the intrusion were: (1) it was 11:30 p.m.; (2) robberies had recently occurred in the area; (3) Revoal was standing on the side of a closed Subway, looking left to right; (4) Revoal walked to the side of an open liquor store, continued looking left to right, then walked toward the back of the liquor store, where it was dark; and (5) Revoal turned and walked away from McCants when he observed the patrol vehicle. We conclude that these facts, viewed together in light of the officer's training and experience, did not amount to reasonable suspicion sufficient to justify the investigatory stop.

¶ 13 In *Greer*, we held that a close conversation between two individuals in a parking lot adjacent to a bar well known for narcotics sales, where one of the individuals was observed putting currency into his pocket, did not justify a stop. 860 P.2d at 530–32. In *Padgett*, the investigating officer observed the defendant and an acquaintance walking down the street at 1:50 a.m. in an area where there had been a significant amount of criminal mischief. 932 P.2d at 812. When the police vehicle approached, the defendant walked rapidly away from the officers. *Id.* We also held the stop in that case lacked reasonable suspicion. *Id.* at 816.

¶ 14 In contrast, in *People v. Ratcliff,* we held an investigatory stop was justified where a detective testified to observing a known user and supplier of drugs, who had an outstanding arrest warrant, walk up to another individual in a known drug area and simultaneously exchange objects. 778 P.2d 1371, 1378–79 (Colo.1989). Similarly, in *Canton*, we upheld a stop in which the investigating officer, in response to an anonymous tip, observed a large group of males gathered in a known drug area. 951 P.2d at 907, 911. Upon seeing the patrol car, most of the men fled, and the officer observed the defendant holding a large roll of bills. *Id.* at 907.

¶ 15 This case is closer to *Greer* and *Padgett* than to *Ratcliff* and *Canton.* Here, as in *Greer* and *Padgett,* the police observed a man late at night in an area that had experienced recent crime engage in an ambiguous and, as the officer admitted in his testimony, "aimless" action—looking left to right and wandering across a parking lot. By contrast, both cases where the court found reasonable suspicion involved more deliberate, suspicious conduct supported by corroborating evidence. In *Ratcliff,* the defendant was a known user and supplier of drugs, and the officer observed him exchange objects with another individual. 778 P.2d at 1379. Likewise, the officer in *Canton* had received a tip that a large group of males might be involved in drug trafficking, and when he arrived on the scene, the males scattered, leaving defendant holding a large roll of bills. 951 P.2d at 907.

¶ 16 We have often stated that, standing alone, a history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality. *See, e.g., People v. Rahming,* 795 P.2d 1338, 1342 (Colo.1990). In this case, the recent robberies in the area cannot alone justify the stop. Although the hour was late and, despite the criminal activity, businesses in the area were open and there were several passersby on the street, so it was not unusual for the officer to see a person in that area at that hour.

¶ 17 Although we must consider the location and the hour together with Revoal's actions, the actions of looking left and right and wandering across the parking lot in a seemingly aimless fashion (as opposed to engaging in more deliberate conduct) are too ambiguous to amount to reasonable suspicion that a crime had occurred, was in progress or was about to occur. Revoal's behavior falls below the level of suspicion aroused by the observed behavior in *Terry,* where the defendants paced "alternately along an identical route, pausing to stare in the same store window roughly 24 times," conferring with each other in between passes and then conferring with a third individual. *Terry,* 392 U.S. at 22–23, 88 S.Ct. 1868. In contrast, Revoal was not looking in any shop windows,

nor was he standing or walking where he could access a store to rob it. He did not, at any time, confer with any other person in the vicinity. "There is nothing unusual in ... standing ... on a street corner, perhaps waiting for someone. Nor is there anything suspicious about people in such circumstances strolling up and down the street, singly or in pairs." *Id.* This is particularly so in an area where businesses are open and other individuals are present.

¶ 18 Finally, although flight from police may support an informant's claim that an individual is engaged in drug trafficking, *Canton*, 951 P.2d at 910–11, an attempt to avoid coming into contact with a police officer does not, without more, justify an investigative detention of the individual. *Rahming*, 795 P.2d at 1342. Here, Revoal's change in direction did not convert the relatively innocuous set of circumstances the police observed into justification for an investigatory stop.

¶ 19 Under the totality of circumstances, the facts the police knew at the time of the intrusion did not satisfy the threshold constitutional test for reasonable suspicion.

### III.

¶ 20 Accordingly, we affirm the trial court's suppression order and return this case to the trial court for further proceedings consistent with this opinion.