2012 CO 37

The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Adolph E. FUNEZ–PAIAGUA,
Defendant–Appellee.

No. 11SA368.

Supreme Court of Colorado,
En Banc.

May 21, 2012.

Mitchell R. Morrissey, District Attorney, Second Judicial District, Robert J. Whitley, Chief Appellate Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Arnie A. Beckman, Deputy Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

¶1 In this interlocutory appeal, we review the trial court's order suppressing evidence that police officers seized from Adolph E. Funez–Paiagua. We conclude that the officers had reasonable suspicion to justify an investigatory stop under the totality of the circumstances known to the officers at the time of the stop. Accordingly, we reverse the trial court's order.

## I. Facts and Procedural History

¶2 Two police officers observed Funez–Paiagua standing on the property of a closed business late at night. When one of the officers approached, Funez–Paiagua fled and the officer heard a loud crash as a car stereo amplifier fell to the ground. The officer ran after him and ordered him to stop. Funez–

Paiagua stopped and the officers asked him for his name and birthdate and asked him what he was doing. The officers then searched law enforcement databases and discovered four outstanding warrants for Funez–Paiagua's arrest. The officers arrested Funez–Paiagua, searched a bag he was carrying, and found a gun in it. The prosecution charged Funez–Paiagua with possession of a weapon by a previous offender.

¶ 3 Funez–Paiagua moved the trial court to suppress the gun from evidence. At the suppression hearing, the two officers testified regarding the events of the evening. The officers testified that they were assigned to patrol a portion of Colfax Avenue because the area had recently seen an increase in criminal activity. The first officer saw Funez–Paiagua standing on private property belonging to an auto body shop. The officers testified that it was 1:15 a.m., that the auto body shop was closed, and that no other businesses in the area were open. Although the testimony indicated that Colfax Avenue is generally a busy area, the officers testified that at the time of the arrest no other people were nearby. The first officer approached the place where he had seen Funez–Paiagua standing, but Funez–Paiagua was no longer there. The officer then heard a loud crash and saw Funez–Paiagua running away from him and carrying some bags.[1] The officer then ordered Funez–Paiagua to stop.

¶ 4 The trial court found the officers' testimony credible, but concluded that the evidence did not establish reasonable suspicion to justify the investigatory stop. Specifically, the trial court determined that the seizure occurred "at the time the [first] officer contacted [Funez–Paiagua]." The trial court found that, at that time, the officer knew that Funez–Paiagua was standing on private property late at night. The trial court concluded that these facts did not support reasonable suspicion to justify the investigatory stop and therefore the trial court suppressed the evidence seized as a result of the stop.

¶ 5 The People filed this interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2011), and C.A.R. 4.1.

## II. Standard of Review

¶ 6 When reviewing an order on a motion to suppress evidence, we defer to the trial court's factual findings and will not disturb them if they are supported by competent evidence in the record. *People v. Revoal,* 2012 CO 8, ¶ 9, 269 P.3d 1238. We review de novo the trial court's ultimate legal conclusion of whether a seizure violated constitutional prohibitions against unreasonable searches and seizures. *People v. Brown,* 217 P.3d 1252, 1255 (Colo.2009).

## III. Applicable Law

¶ 7 The federal and Colorado constitutions prohibit unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7. Warrantless seizures must generally be supported by probable cause, but an investigatory stop based on reasonable suspicion is an exception to this general rule. *People v. King,* 16 P.3d 807, 812–13 (Colo.2001); *see also Terry v. Ohio,* 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 508–10, 485 P.2d 495, 497–98 (1971). An investigatory stop is an encounter in which an officer briefly stops a suspicious person and makes reasonable inquiries to confirm or dispel these suspicions, such as determining an individual's identity or obtaining an explanation of a person's behavior. *King,* 16 P.3d at 814; *People v. Greer,* 860 P.2d 528, 530 (Colo.1993).

¶ 8 Three conditions must be met when undertaking an investigatory stop: (1) there must be reasonable suspicion that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *Greer,* 860 P.2d at 530. Only the first condition is at issue in this case.

¶ 9 Reasonable suspicion exists when the facts known to the officer, taken together with rational inferences from those facts, create a reasonable and articulable sus-

---

1. The officers testified consistently that Funez–Paiagua was "attempting to flee." Funez–Paiagua's counsel, however, impeached the first offi-
cer with his prior statement that Funez–Paiagua fled by "walk[ing] away ... very quickly" from the officer, not by running away.

picion of criminal activity which justifies an intrusion into the defendant's personal privacy at the time of the stop. *Id.* To determine whether an investigatory stop was based on reasonable suspicion, a court must consider the facts and circumstances known to the officer at the time of the intrusion. *People v. Padgett,* 932 P.2d 810, 815 (Colo.1997).

## IV. Analysis

■ ¶ 10 In this case, the facts and circumstances known to police at the time of the intrusion were: (1) it was 1:15 a.m.; (2) criminal activity had recently increased in the area; (3) Funez–Paiagua was standing on the private property of an auto body shop; (4) the shop was closed; (5) no other businesses in the area were open; (6) no other people were nearby; (7) the officer heard a loud crash; (8) Funez–Paiagua fled; and (9) Funez–Paiagua was carrying bags. We conclude that these facts, viewed together and in light of the officer's training and experience, create reasonable suspicion to justify the investigatory stop.

¶ 11 We note at the outset that the trial court's ruling mentioned only the late hour and the fact that Funez–Paiagua was standing on private property. Although the trial court did not make specific findings of fact regarding the other undisputed facts listed above, the trial court specifically found the officers' testimony credible. We therefore conclude that the trial court did not disbelieve these other relevant facts. Rather, it appears that the trial court focused on the facts known to the officer when the officer first decided to approach the place where Funez–Paiagua had been standing. We must, however, analyze the facts and circumstances known to the officer when the officer ordered Funez–Paiagua to stop. *Padgett,* 932 P.2d at 815 (we must analyze reasonable suspicion based on facts known to the officer *at the time of the intrusion* upon an individual's personal privacy). We therefore undertake our analysis by considering all of the facts listed above.

¶ 12 In *Revoal,* we recently determined that reasonable suspicion did not exist where a person stood on private property in a high-crime area late at night, the person looked left and right while aimlessly walking across a parking lot, and the person changed direction and walked away after noticing a police car. 2012 CO 8, ¶ 12, 269 P.3d 1238. We noted that there is nothing unusual or suspicious about a person standing on a street corner, or walking up and down the street. *Id.* at ¶ 17 (quoting *Terry,* 392 U.S. at 22–23, 88 S.Ct. 1868). We reasoned that this principle was especially applicable in *Revoal* because other businesses in the area were open and other people were present. *Id.* In this case, Funez–Paiagua was also standing on private property in a high-crime area late at night. Unlike in *Revoal,* however, in this case no other businesses were open and there were no other people nearby. Funez–Paiagua's presence on the property of the auto body shop in this case is therefore more suspicious than Revoal's presence in the parking lot.

■ ¶ 13 Furthermore, we recognize that an attempt to avoid coming into contact with police does not, without more, justify an investigatory stop. *Id.* at ¶ 18. This case, however, involves more. In *Revoal,* the defendant was already walking aimlessly through a parking lot and then changed direction and walked away from a police car. *Id.* at ¶¶ 12, 18. We determined that the "change in direction did not convert the relatively innocuous set of circumstances the police observed into justification for an investigatory stop." *Id.* at ¶ 18. Here, by contrast, the officer heard the loud crash of a car stereo amplifier falling to the ground on the property of the auto body shop, which housed a number of cars. The officer then noticed Funez–Paiagua fleeing and carrying bags. Under these circumstances, an officer could reasonably suspect that Funez–Paiagua had stolen some items from the shop or from the cars parked on the shop property and had stored them in the bags he was carrying as he hurried away from the officer. Moreover, as we noted above, Funez–Paiagua's presence on the shop's property was already more suspicious than Revoal's presence in the parking lot. Considering all of these facts and circumstances together, we conclude that the officer in this case had reasonable suspicion to order Funez–Paiagua to stop. The trial court therefore incorrectly suppressed the evidence collected in the search incident to arrest after the discovery

of the outstanding warrants resulting from the initial stop.

## V. Conclusion

¶ 14 We conclude that the totality of the circumstances known to the officers at the time of the stop create reasonable suspicion. The investigatory stop was therefore not an unreasonable seizure and the trial court incorrectly suppressed evidence resulting from the stop. Accordingly, we reverse the trial court's order.

Chief Justice BENDER dissents, and Justice MÁRQUEZ joins in the dissent.

Chief Justice BENDER, dissenting.

The majority holds that the Fourth Amendment's protection against unreasonable searches and seizures does not protect Funez–Paiagua because he was in an area where no businesses were open and no other people were nearby and because the officer heard a crash as Funez–Paiagua attempted to avoid contact with him. In my view, our recent decision in *People v. Revoal* is factually indistinguishable from this case. 2012 CO 8, 269 P.3d 1238. In *Revoal*, we held that Revoal's presence late at night in an area with a history of robberies next to a closed business, his behavior similar to someone staking out a business or scanning for police, and his attempt to avoid contact with police did not satisfy the constitutional mandate requiring reasonable suspicion to justify an investigatory stop. *Id.* at 8. I believe that the majority's attempt to distinguish *Revoal* from this case based on minor factual differences undermines our precedent and will confuse trial courts when ruling on suppression motions. Hence, I respectfully dissent.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Before making an investigatory stop of a person on the street, a police officer must have an articulable and specific basis in fact for suspecting that the individual is committing, has committed, or is about to commit a crime. *People v. Padgett*, 932 P.2d 810, 814 (Colo.1997). To determine whether an investigatory stop is valid, a court must take into account the facts and circumstances known to the officer at the time of the stop. *Padgett*, 932 P.2d at 815. The officer must point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion of an investigatory stop. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. A mere hunch that a criminal act has occurred is insufficient to make a stop constitutionally permissible. *People v. Greer*, 860 P.2d 528, 530–31 (Colo.1993).

The facts of this case are markedly similar to the facts of *Revoal*, where we affirmed the trial court's suppression order on the grounds that there was not a reasonable suspicion to justify an investigatory stop. *Revoal*, ¶ 19. Both Revoal and Funez–Paiagua were observed late at night in an area that had recently experienced an increase in crime. *Id.* at ¶ 5. Both Revoal and Funez–Paiagua were standing outside of a closed business, but while Revoal was behaving in a suspicious manner "consistent with the behavior of someone staking out a business or scanning for police," Funez–Paiagua was simply standing looking toward the street. *Id.* Both Funez–Paiagua and Revoal allegedly attempted to avoid contact with the police: when an officer pulled a patrol vehicle over near Revoal, Revoal attempted to avoid contact and turned and walked in the opposite direction. *Id.* The officer in this case testified that Funez–Paiagua walked quickly or ran away from him when he approached.

In resolving *Revoal*, we contrasted cases where we held that an investigatory stop was justified by reasonable suspicion and cases where it was not. *Id.* at ¶¶ 13–14. In *People v. Greer*, an officer observed a close conversation between two individuals in a parking lot adjacent to a bar notorious for narcotics sales and one of the individuals was observed putting currency in his pocket. 860 P.2d 528, 531 (Colo.1993). We held that these circumstances did not support reasonable suspicion to justify an investigatory stop. *Id.* at 532.

We relied in part on our precedent holding that, standing alone, a history of criminal activity in a locality does not justify suspension, of the constitutional rights of everyone, or anyone, who may subsequently be in that locality. *Id.* at 531.

In *People v. Padgett,* the investigating officer observed the defendant and an acquaintance walking down the street at 1:50 a.m. in an area where there had been a significant amount of criminal mischief. 932 P.2d at 812. When the police vehicle approached the men, the defendant began to walk rapidly away. *Id.* We held that the subsequent stop of the defendant lacked reasonable suspicion, noting that an officer's unarticulated hunch that a criminal act has occurred is not sufficient to support an investigatory stop. *Id.* at 815, 816.

In contrast, in *People v. Ratcliff,* we upheld an investigatory stop where an officer observed a known user and supplier of drugs walk up to another individual in an area with a history of high drug activity and simultaneously exchange objects in a secretive manner. 778 P.2d 1371, 1373 (Colo.1989). We relied upon the officer's prior knowledge that the defendant was a user and supplier of drugs to support the investigatory stop. *Id.* at 1379.

In *People v. Canton,* we upheld an investigatory stop when an officer received an anonymous tip that drug trafficking was occurring in a particular location. 951 P.2d 907, 908 (Colo.1998). Upon the officer's arrival to that location, he observed a large group of males, most of whom fled when he arrived, and he observed the defendant with a large roll of bills. *Id.* We gave particular weight to the fact that there had been an anonymous tip that the group the defendant was found with was possibly engaged in drug dealing, which was corroborated by the officer's observations at the scene. *Id.* at 910.

After analyzing these cases in *Revoal,* we reasoned that Revoal's actions were more similar to those of the defendants in *Greer* and *Padgett,* where reasonable suspicion was lacking, than to *Ratcliff* and *Canton,* where reasonable suspicion existed. We concluded that the cases where reasonable suspicion was present involved "more deliberate, suspicious conduct supported by corroborating evidence," as compared to the relatively innocuous situation in *Revoal* of "the police observ[ing] a man late at night in an area that had experienced recent crime engage in an ambiguous and, as the officer admitted in his testimony, 'aimless' action—looking left to right and wandering across a parking lot." *Revoal,* ¶ 15. We noted that an attempt to avoid coming into contact with a police officer does not, without more, justify an investigative detention of the individual. *Id.* at ¶ 18; *see People v. Rahming,* 795 P.2d 1338, 1342 (Colo.1990).

The majority acknowledges the similarities of this case to *Revoal.* Maj. op. at ¶ 12. Nonetheless, the majority concludes that this case is distinguishable from *Revoal* based on two factors: (1) "no other businesses were open and there were no other people nearby" and (2) "the officer heard the loud crash of a car stereo amplifier falling to the ground on the property of the auto body shop ... then noticed Funez–Paiagua fleeing and carrying bags." *Id.* at ¶ 13.

First, the majority states that Funez–Paiagua's presence on the property of the auto body shop is more suspicious than Revoal's presence in the parking lot of a closed business because no other businesses were open on that block of Colfax Avenue at the time and there were no other people nearby. *Id.* at ¶ 12. The majority reaches this conclusion based on one sentence in *Revoal* in which we noted that the oft-cited principal from *Terry v. Ohio*—that there is nothing unusual in standing on a street corner nor suspicious about people strolling up and down the street—is particularly true in an area where businesses are open and other individuals are present. *Id.; Revoal,* ¶ 17. The majority relies on this one line from *Revoal* to hold, without further analysis, that because other businesses on the block were not open at that time and no other people were nearby, Funez–Paiagua's presence at the auto body shop was suspicious. In my view, this reasoning misreads the rationale of *Revoal.* Noting that something is particularly true in a certain circumstance does not foreclose the possibility that it can also be true in other circumstances. My reading of *Revoal* does not support a conclusion that

Fourth Amendment rights disappear simply because a person happens to be on the block of a street where the businesses are closed.

The majority's conclusion that Funez–Paiagua's presence was more suspicious than Revoal's disregards the trial court's factual findings that there is nothing unusual about people being on Colfax Avenue twenty-four hours a day and that Funez–Paiagua was "not standing where he [didn't] have any right to be." It also disregards the fact that Funez–Paiagua was not, as Revoal appeared to be, "staking out a business or scanning for police." *Revoal,* ¶ 5. The trial court found that there was no evidence that Funez–Paiagua was trying to do anything to the business or looking at the business in a way that would cause someone to suspect that he was trying to commit a crime or had committed one. His presence at the closed auto body shop was actually *less* suspicious than Revoal's presence at a closed business that he appeared to be staking out.

Second, the majority concludes that although Revoal also avoided coming into contact with an officer, Funez–Paiagua's case is different because "the officer heard the loud crash of a car stereo amplifier falling to the ground on the property of the auto body shop" and the officer "noticed Funez–Paiagua fleeing and carrying bags." Maj. op. at ¶ 13. Initially, I note that the characterization of Funez–Paiagua "fleeing" may be inaccurate. The officer testified at the suppression hearing that Funez–Paiagua ran away, while he had previously testified that Funez–Paiagua "walked away quickly." The trial court did not resolve this factual discrepancy. In addition, the record is unclear as to whether Funez–Paiagua was attempting to avoid contact with the officer. The officer testified that he approached on foot the spot where he had previously seen Funez–Paiagua standing as he drove by, but Funez–Paiagua was no longer there. As he looked around for Funez–Paiagua, he heard a crash around the corner and only then did he move forward to a position where he could see Funez–Paiagua running or walking quickly away from him. Hence, it is just as likely that Funez–Paiagua was already moving in that direction before the officer approached and not attempting to avoid contact with the officer.

Irrespective of the accuracy of its characterization, the majority focuses not on Funez–Paiagua's possible attempt to avoid contact with the officer but on the fact that while he attempted to avoid contact with the officer there was a loud crash and Funez–Paiagua was carrying bags. Maj. op. at ¶ 13. Although the majority notes that the crash sound came from Funez–Paiagua dropping a stereo amplifier,[1] the source of the sound was not actually known to the officer at the time he heard it.[2] The officer testified that he did not observe anything wrong with the building, such as broken glass, as he approached and then heard the sound.

In my view, an unidentified sound heard near the side of a well-traveled road, in the absence of further evidence to indicate criminal activity, does not itself justify an investigatory stop. Similarly, carrying bags, without more, cannot give rise to a reasonable suspicion of criminality. *See U.S. v. O'Neal,* 17 F.3d 239, 241–42 (8th Cir.1994) ("The mere fact that young people wear athletic jackets and carry athletic bags hardly presents a basis to believe that they are criminals."); *State v. Carlisle,* 2006 WL 827384 (Ohio Ct.App.) (finding no reasonable suspicion justifying an investigative stop when an officer observed the defendant running behind a store that was frequently a target of thefts while carrying a bag).

The Fourth Amendment does not cease to protect citizens when businesses are closed and when loud sounds occur on busy streets. Hence, I respectfully dissent.

I am authorized to state that Justice MÁRQUEZ joins in this dissent.

---

1. The officers later determined that this item was not stolen.

2. The officer testified at the suppression hearing that he thought it sounded like some sort of electronic equipment, such as a radio amplifier.