APPEL, Justice
(dissenting).
In my view, the term “all numerals and letters” in Iowa Code section 321.37(3) means “all numerals and letters,” not “all numerals, letters, and the name of the county.” I reach this conclusion by examining Iowa Code section 321.166(2) (2009), which provides:
Every registration plate or pair of plates shall display a registration plate number which shall consist of alphabetical or numerical characters or a combination thereof and the name of this state, which may be abbreviated. Every registration plate issued by the county treasurer shall display the name of the county....
(Emphasis added.)
This provision distinguishes between the registration plate number, which contains *370 alphabetical or numerical characters, and the name of the county. Reading the statutes in pari materia, I would conclude “all numerals and letters” in section 321.37(3) refers to the registration plate number, not the name of the county. Notwithstanding my conclusion, I recognize there is a plausible contrary interpretation, based in part on policy, which is presented in the majority opinion.
There is, however, a countervailing policy and a larger story in this case that should not be overlooked. Davenport police had received a tip from a confidential informant, but the tip contained only con-elusory information. Unlike a tip from a citizen informant, a tip from a confidential informant is not entitled to a presumption of reliability. See State v. Randle, 555 N.W.2d 666, 669 (Iowa 1996) (“Because the confidential informant was not a citizen informant, the informant was not entitled to a presumption of reliability.”); State v. Drake, 224 N.W.2d 476, 478-79 (Iowa 1974) (noting the rule requiring the state to prove the informant’s “prior reliability is considerably relaxed” in the case of a citizen informant).
At the suppression hearing, the State offered no evidence of the informant’s reliability. Instead, the State attempted to rely on corroboration at the scene, which consisted almost solely of corroboration of innocent facts like the make, model, and license plate number. Mere corroboration of innocent facts does not establish the basis for a Terry-type traffic stop. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254, 261 (2000) (holding that to establish reasonable suspicion, the tip must “be reliable in its assertion of illegality, not just in its tendency to identify a determinate person”); United States v. Roch, 5 F.3d 894, 897-98 (5th Cir.1993) (finding tip from known confidential informant who had previously given reliable information did not provide reasonable suspicion for an investigatory stop because the tip failed to provide “significant details” or “a prediction of future behavior” and police did not observe any suspicious behavior in their surveillance of the defendant).
The only allegedly suspicious activity is that the suspect’s car pulled over to the side of the road for a few minutes after having been followed from “a far distance,” or at a distance of “a block or two,” by an unmarked police car. I am not sure a car pulling over gives rise to a hunch, let alone the reasonable suspicion traditionally required to execute a traffic stop under either the Fourth Amendment of the United States Constitution or article I, section 8 of the Iowa Constitution. See, e.g., People v. Revoal, 269 P.3d 1238, 1241 (Colo.2012) (no reasonable suspicion when defendant looked left, looked right, and walked away when he noticed a police vehicle); State v. McCleery, 251 Neb. 940, 560 N.W.2d 789, 793 (1997) (holding approaching motorist who turns around and drives away rather than pass through a checkpoint does not trigger reasonable suspicion for a stop); State v. Nicholson, 188 S.W.3d 649, 661 (Tenn.2006) (flight, without more, does not establish reasonable suspicion); State v. Gatewood, 163 Wash.2d 534, 182 P.3d 426, 428 (2008) (walking away from police does not give rise to reasonable suspicion).
The officers seem to have realized they did not have a basis for the traffic stop based upon the unreliable and uncorroborated confidential informant’s tip and the mere pulling over of a vehicle along the side of the road. So, instead, they defended the stop by asserting the license plate frame covered the name of the county on the bottom of the plate.
This stop raises the question of pretext. The officers were not engaged in their stakeout to look for license plate violations, *371 nor did they activate their emergency lights and drive through intersections to catch up with Harrison merely to stem the rising tide of license plate infractions. The officers’ obvious goal was not to take care of the license plate, but rather to investigate an alleged crime for which they had no basis to initiate a stop.
There is a question as to whether a pretextual basis for a stop or search is constitutionally sufficient. The United States Supreme Court in Whren v. United States, 517 U.S. 806, 812-16, 116 S.Ct. 1769, 1774-76, 135 L.Ed.2d 89, 97-100 (1996), answered this question in the affirmative under the Fourth Amendment, and we are bound by that interpretation for purposes of the United States Constitution. Following the Supreme Court’s lead, one court allowed a stop based on the obstruction caused by hanging air fresheners and fuzzy dice. See Commonwealth v. Shabazz, 18 A.3d 1217, 1222 (Pa.Super.Ct.2011).
At least two state appellate courts, however, have rejected Whren in the context of traffic stops in interpreting their state constitutions. The most recent case is State v. Ochoa, 146 N.M. 32, 206 P.3d 143 (App.2008). In this case, the New Mexico appellate court considered whether a stop for a seat belt violation of a suspect being investigated for drug activity violated the search and seizure clause of the New Mexico Constitution. Id. at 146-47. The New Mexico court canvassed numerous authorities, noting, in particular, the ease with which law enforcement may stop automobiles on the road in light of the pervasiveness of minor traffic violations. Id. at 148-50. The New Mexico court emphasized that under the New Mexico Constitution, there is no reduced expectation of privacy in an automobile. Id. at 151. The New Mexico court further stated:
In performing a pretextual traffic stop, a police officer is stopping the driver, “not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation.”
Id. at 149 (quoting State v. Ladson, 138 Wash.2d 343, 979 P.2d 833, 837-38 (1999)).
The New Mexico court relied on a case from the Washington Supreme Court, which reached a similar conclusion. See id. (citing Ladson, 979 P.2d at 837-38); see also State v. Heath, 929 A.2d 390, 402 (Del.Super.Ct.2006) (concluding that stops “demonstrated to have been made exclusively for the purpose of investigating an officer’s hunch about some other offense” violate the Delaware Constitution). See generally Michael Sievers, Note, State v. Ochoa: The End of Pretextual Stops in New Mexico?, 42 N.M. L.Rev. 595 (2012) (discussing the New Mexico court’s decision in Ochoa and concluding the court was right to depart from United States Supreme Court precedent).
While we have recognized police may stop a vehicle when there is reason to believe there is an ongoing civil infraction, State v. Pals, 805 N.W.2d 767, 774 (Iowa 2011), we have never directly considered the validity of a traffic stop where the basis of the stop was alleged to be pretex-tual. This issue of whether Whren is good law under the Iowa Constitution when a traffic stop is based on pretext, however, was not raised by Harrison and we do not address it today.
Much has been written about unbridled discretion to stop vehicles on the open road. In particular, commentary has been concerned that without some constitutional restraints, African-Americans and other *372 minority groups may be subject to stops for “driving while black.” David A. Harris, “Driving While Black” and All Other Traffic Offenses: The Supreme Court and Pretextual Traffic Stops, 87 J.Crim. L. & Criminology 544, 550-58 (1997); see also David A. Harris, Car Wars: The Fourth Amendment’s Death on the Highway, 66 Geo. Wash. L.Rev. 556, 582-84 (1998) (concluding evidence supports a finding that police stop minorities “in numbers greatly disproportionate to their presence in the driving population” even though “there is no race- or ethnicity-neutral explanation for it”); Lewis R. Katz, “Lonesome Road”: Driving Without the Fourth Amendment, 36 Seattle U.L.Rev. 1418, 1421-33 (2013) (noting that Whren “solidified a trend in United States jurisprudence toward ignoring police officers’ racial biases, admitted or otherwise” and concluding the only workable solution to pretextual traffic stops is through a reconsideration of Whren); Wayne R. LaFave, The Routine Traffic Stop from Start to Finish: Too Much “Routine, ” Not Enough Fourth Amendment, 102 Mich. L.Rev. 1843, 1860-61 (2004) (discussing the difficulties of an equal protection challenge to selective enforcement of traffic laws). While I recognize the need to allow law enforcement to do its job, article I, section 8 of the Iowa Constitution requires us to ensure individuals are protected from unwarranted seizures on the open road.
We recently began to closely examine traffic stops to prevent expanded and unwarranted searches and seizures. See, e.g., State v. Tyler, 830 N.W.2d 288, 297-98 (Iowa 2013) (concluding there was neither probable cause nor reasonable suspicion to stop a vehicle for a license plate violation and that the officer may have specifically targeted the vehicle for some other unknown reason); Pals, 805 N.W.2d at 782-84 (holding consent to search a vehicle was invalid where the suspect had been subject to a pat-down search, detained in the police vehicle, and was not advised that he was free to leave, that he could refuse consent, or that all business related to the initial stop was complete). Other state supreme courts have utilized their state constitutions to prevent arbitrary police conduct on the open road in a variety of contexts. See, e.g., Sitz v. Dep’t of State Police, 443 Mich. 744, 506 N.W.2d 209, 210 (1993) (declining to follow under state constitution on remand the United States Supreme Court’s decision in Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990)); State v. Askerooth, 681 N.W.2d 353, 361-63 (Minn.2004) (rejecting United States Supreme Court decision in Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), which permitted custodial arrest for seat belt violation); Ascher v. Comm’r of Pub. Safety, 519 N.W.2d 183, 187 (Minn.1994) (declining to follow the United States Supreme Court’s decision in Sitz, in case involving temporary road block); State v. Sterndale, 139 N.H. 445, 656 A.2d 409, 411 (1995) (rejecting “automobile exception” to warrant requirement and declining to follow United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)); State v. Carty, 170 N.J. 632, 790 A.2d 903, 912 (2002) (consent to search a vehicle must be based on reasonable suspicion of criminal wrongdoing beyond initial valid motor vehicle stop, departing from Schneckloth v. Bustamante, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), in context of traffic stop). These state supreme courts refuse to simply color match cases under their state constitutions with federal precedent and, instead, engage in independent analysis of the state constitutional issues presented.
In the meantime, the take-away point for Iowa citizens is that they better go out *373 to the garage and check their license plate frames if they want to avoid being pulled over by law enforcement on the open road. For the thousands of Iowans who have a frame that promotes a sports team, or an auto dealer, or have a nice (or not so nice) slogan, beware! If the license plate frame happens to obscure the county name on the plate, the State will take the position that police may stop the vehicle anywhere and at any time, whether one is dropping the kids off at school, returning home from the football game, or on the way to work, without any further sign of criminal wrongdoing. The State will likely take the position that the decision to stop a vehicle will rest in the unreviewable discretion of the police regardless of pretext. Sounds a bit like a general warrant, doesn’t it? See State v. Ochoa, 792 N.W.2d 260, 269-73 (Iowa 2010) (discussing the desire of the framers of the Fourth Amendment to reject the general warrants authorized by the British Crown).
HECHT, J., joins this dissent.