**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Washakie RUSHDOONY, Defendant–
Appellant.**

**No. 03CA0490.**

Colorado Court of Appeals,
Div. V.

April 8, 2004.

Certiorari Denied Sept. 7, 2004.

Ken Salazar, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Washakie Rushdoony, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a schedule II controlled substance and possession of drug paraphernalia. Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress. We disagree and therefore affirm.

A deputy sheriff patrolling at about 3:30 a.m. near a strip mall that had been the site of recent burglaries saw defendant and a companion rummaging through a dumpster behind an electrical business in the mall. The deputy testified at the suppression hearing that no businesses were open, that the area where the dumpster was located was dark and was not a place where customers would park, and that he had never before encountered people in the area. According to the deputy's testimony, when he drove up, defendant and his companion pulled their arms out of the dumpster and began backing away from the dumpster toward a nearby car. The deputy put his spotlight on defendant and his companion, got out of his car, and asked what they were doing. They said they were "dumpster diving," which the deputy understood to mean sifting through the dumpster to find old items they could salvage.

The deputy asked the individuals for identification and ran a warrant check. A second deputy then arrived at the scene. He had been in the vicinity and came to see if assistance was needed after hearing on his radio that the first deputy was contacting two suspicious persons.

The first deputy asked defendant and his companion whether the car parked near them was theirs. Both said that it belonged to a friend, who had gone to get gas after the car broke down. The deputy considered the response suspicious because the location where the car was parked was "not somewhere you would pull off if you had broken down."

The second deputy asked defendant whether he had any weapons on him. Defendant responded that he had a knife in his back pocket. The second deputy retrieved a pocket knife and then conducted a patdown search to ensure that defendant had no other weapons on him. While patting defendant's outer garments, the deputy felt, in defendant's front left pocket, an "item consistent from previous dealings that felt like a pipe." He reached into the pocket and retrieved a methamphetamine pipe and a small clear plastic bag containing a white powdery substance he believed to be methamphetamine. A subsequent general search of defendant produced additional drugs and a second pipe.

The trial court denied defendant's motion to suppress the evidence found in his pockets. The court found that the initial investigatory stop was valid based on the facts known to the deputy at the time, and that the removal of the pipe the deputy felt during the patdown search for weapons was proper under the "plain feel" doctrine as set forth in

*Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

## I.

Defendant contends the trial court misapplied the controlling legal standards and made clearly erroneous factual findings in concluding that the facts known to the officers justified their initial investigatory stop. We disagree.

When we review a trial court's suppression ruling, we defer to its findings of historical fact if they are supported by competent evidence. However, we review its conclusions of law de novo, assessing whether the court applied the correct legal standard and whether the totality of the circumstances supports its ultimate legal conclusion with respect to the suppression issues. *See People v. Garcia,* 11 P.3d 449 (Colo.2000); *People v. Dixon,* 21 P.3d 440 (Colo.App.2000).

The United States and Colorado Constitutions afford protection against unreasonable searches and seizures. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7.

The prosecutor conceded at trial that the deputy's initial encounter with defendant was an investigatory stop from the point at which he retained defendant's identification to run a warrant check, and both parties on appeal characterize the encounter as an investigatory stop. Like an arrest, an investigatory stop is a seizure that implicates constitutional protections. However, while an arrest must be based on probable cause to believe that the person arrested has committed a crime, a police officer may temporarily stop a person for investigatory purposes without probable cause to support a search warrant or probable cause to arrest the person. *People v. Canton,* 951 P.2d 907 (Colo. 1998); *People v. Milligan,* 77 P.3d 771 (Colo. App.2003).

An investigatory stop does not offend constitutional prohibitions against unreasonable seizures if three criteria are met. First, there must be an articulable and specific basis in fact for suspecting—that is, a reasonable suspicion—that criminal activity has taken place, is in progress, or is about to occur. Second, the purpose of the intrusion must be reasonable. Third, the scope and character of the intrusion must be reasonably related to its purpose. *People v. Canton, supra; see also People v. Garcia, supra.*

In analyzing whether the facts created a reasonable suspicion of criminal activity that would justify the intrusion, a court must look at the totality of the circumstances known to the police officers at the time of the stop, along with any rational inferences from those circumstances. *People v. Garcia, supra; see People v. Polander,* 41 P.3d 698, 703 (Colo.2001) (investigatory stop is justified "as long as the totality of the circumstances indicates that the police possess some minimal level of objective suspicion (as distinguished from a mere hunch or intuition) that the person to be stopped is committing, has committed, or is about to commit a crime").

A defendant's actions after the investigatory stop was initiated cannot be used as a rationalization to justify the stop, although they may justify continuing the detention for further investigation. *See People v. Mack,* 33 P.3d 1211 (Colo.App.2001); *People v. Ball,* 821 P.2d 905 (Colo.App.1991).

Relevant circumstances that may be considered in assessing whether the police had an articulable and specific basis in fact for suspecting criminal activity include "the lateness of the hour, the character of the area, the reaction to the presence of police, and whether a companion is being arrested." *People v. Smith,* 13 P.3d 300, 306 (Colo.2000). While the presence of a single factor alone is generally insufficient to support an investigatory stop, *see Outlaw v. People,* 17 P.3d 150 (Colo.2001) (furtive gesture, standing alone, is too ambiguous to constitute basis for investigatory stop); *People v. Greer,* 860 P.2d 528 (Colo.1993)(mere presence in high crime area insufficient to justify investigatory stop), the presence of some of these circumstances in combination may raise a reasonable suspicion of criminal activity that justifies the intrusion. *See Hampe v. Tipton,* 899 P.2d 325, 328 (Colo.App.1995)("[T]here can be circumstances in which wholly lawful conduct may justify the suspicion that criminal activity is afoot."); *see also Illinois v. Wardlow,* 528

U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000)(after observing that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion" and that "officers are not required to ignore the relevant characteristics of a location," Court held that respondent's presence in area of heavy narcotics trafficking, together with his unprovoked flight upon noticing police, justified investigatory stop); *People v. Pigford,* 17 P.3d 172 (Colo.App.2000)(objective observations of nervous or unduly cautious behavior may be considered as part of totality of circumstances).

In its suppression ruling here, the trial court correctly stated the three criteria that must exist in order for an investigatory stop to be valid; reviewed the evidence; and concluded that, "taking into account what the officer knew" at the time he contacted defendant, the stop was valid. Although, as defendant points out, the trial court's recitation of the relevant facts included reference to facts that arguably became known to the deputies after the initial contact had become an investigatory stop, we nevertheless conclude that the totality of the circumstances to which the deputies testified supports the trial court's conclusion that the stop was valid.

■ The first deputy observed defendant at 3:30 a.m., in a dark area not usually frequented by the public and where he had never before encountered people. The area was not simply one known generally as a high crime area; rather, within the previous two weeks, burglaries had occurred at businesses directly in front of, and directly on one side of, the business behind which the deputy encountered defendant and his companion. Further, upon seeing the deputy's car, the pair pulled away from the dumpster and began moving toward the parked car.

■ We conclude that these facts and the rational inferences from them were sufficient to give rise to at least a "minimal level of objective suspicion" on the part of the deputy that defendant was committing, had committed, or was about to commit a criminal act. *See People v. Polander, supra.* Thus, the circumstances known to the deputy were sufficient to justify an initial investigatory stop. Thereafter, the additional facts discovered by

the deputies, including defendant's explanation for why the car was in that location, gave the deputies a basis for continuing the encounter for further investigation. *See People v. Ratcliff,* 778 P.2d 1371 (Colo.1989); *People v. Ball, supra.*

The circumstances present here are different from those in *People v. Padgett,* 932 P.2d 810 (Colo.1997), upon which defendant relies. In *Padgett,* the facts known to the officer at the time of the intrusion were that (1) it was 1:50 a.m., (2) criminal mischief and car break-ins had recently occurred in the neighborhood, (3) two men were walking, and (4) one of them slipped on an icy sidewalk. In upholding the trial court's ruling that these facts did not justify an investigatory stop, the supreme court observed that there was nothing unusual about an individual slipping on an icy sidewalk, and that a stop could not be justified based solely on the reputation of past criminal activity in a locality.

Here, by contrast, defendant was not simply walking on a public sidewalk. He was in a dark area behind a store, with no public access, digging in a dumpster, from which he immediately backed away, moving towards his car, when the deputy approached. This behavior could properly be considered as part of the totality of the circumstances known to the deputy at the time of the stop. *See People v. Pigford, supra.* Further, in deciding whether to investigate, the deputy was not required to ignore the fact that there had been recent burglaries in the stores next to and in front of the business behind which defendant was discovered. *See Illinois v. Wardlow, supra; see also People v. Archuleta,* 980 P.2d 509, 515 (Colo.1999)(distinguishing *Padgett* and observing that, while neither flight nor reputation of area for past criminal activity can alone constitute basis for reasonable suspicion, that "does not prevent both of them from combining" with other elements to support investigatory stop).

We also note that factual circumstances similar to those present here have been found by other courts to create a reasonable suspicion of criminal activity justifying an investigatory stop. *See United States v. Dawdy,* 46 F.3d 1427 (8th Cir.1995)(car

parked late at night in deserted parking lot of closed pharmacy that had been source of recent false burglary alarms; defendant started car and attempted to leave when squad car entered lot); *People v. Souza*, 9 Cal.4th 224, 36 Cal.Rptr.2d 569, 885 P.2d 982 (1994) (defendant, standing next to parked car in dark area at 3 a.m., took evasive action when officer directed spotlight toward car); *State v. Fillion*, 474 A.2d 187 (Me.1984)(defendant was parked at 2:30 a.m. near rear loading door of warehouse, officer had never seen activity there at that hour, and defendant's car had been seen on private property that police were requested to check nightly).

▮ Nor do we agree with defendant that the trial court's factual findings must be deemed clearly erroneous because the court stated in its bench ruling that the previous burglaries had been "behind" the business where the deputies encountered defendant. The first deputy had actually testified that the burglaries had occurred at "a liquor store that's right in front of that business, and also there's a dry cleaner that's right on the east side of the business." However, whether the prior burglaries had occurred behind the business or next door to and in front of it was not a significant distinction for purposes of the trial court's ruling, and we do not view it as altering the totality of the circumstances supporting the court's ruling that the investigatory stop was valid.

## II.

Defendant next contends that the deputy's subsequent patdown search exceeded the limits of a permissible protective search for officers' safety, and that, even if the patdown search was legitimate, the trial court erred in upholding the deputy's retrieval of the pipe from his pocket under the plain feel doctrine. Again, we disagree.

### A.

▮ When a police officer conducting a valid investigatory stop has a reasonable, articulable basis to suspect that the person with whom he is dealing may be armed and dangerous, the officer may conduct a patdown search of that person for weapons.

The search must be confined in scope to an intrusion reasonably designed to discover hidden instruments that could be used to harm the officer or others nearby. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Hughes*, 767 P.2d 1201 (Colo.1989); *see also* § 16–3–103(2), C.R.S.2003 ("When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may conduct a pat-down search of that person for weapons.").

▮ Thus, when there is an objectively reasonable basis for the officer's suspicion that the suspect with whom he or she is dealing poses a potential danger, a protective search for weapons will pass constitutional muster as long as the intrusion is reasonably related to the purpose of neutralizing the risk of physical harm confronting the officer and others during the investigatory stop. *See Terry v. Ohio, supra; People v. Ratcliff, supra.*

▮ Here, the second deputy conducted a patdown search only after defendant had stated, in response to the deputy's question, that he had a knife. At the suppression hearing, defendant neither questioned the propriety of the deputy's inquiry whether he had any weapons on him nor challenged the deputy's right to continue the patdown after discovering the knife. In these circumstances, we decline to disturb the trial court's ruling that discovery of the knife was sufficient to allow the deputy to proceed with a patdown search for weapons. *See People v. White*, 64 P.3d 864 (Colo.App.2002)(argument not made at suppression hearing will not be addressed for first time on appeal). In addition, the scope of the continued search was properly limited to a patdown of the exterior of defendant's clothing.

### B.

We further conclude the trial court did not err in upholding the subsequent retrieval of the pipe from defendant's pocket under the plain feel doctrine as articulated in *Minnesota v. Dickerson, supra.*

■ The plain feel doctrine is related to the plain view doctrine, a well-established exception to the warrant requirement. Under the plain view doctrine, when police officers are conducting a legitimate search, they are not required to close their eyes to other incriminating evidence plainly visible to them. Rather, a police officer may seize a plainly visible object inadvertently encountered in the course of a lawful patdown search if the officer has reasonable grounds to believe the object is incriminating. The latter requirement is satisfied if the incriminating nature of the evidence is immediately apparent to the searching officer. *See People v. Dumas*, 955 P.2d 60 (Colo.1998); *People v. Trusty*, 53 P.3d 668 (Colo.App.2001); *see also People v. Campbell*, 94 P.3d 1186, 2004 WL 351143 (Colo.App. No. 01CA1703, Feb. 26, 2004)("immediately apparent" requirement is satisfied if, without further search, police have probable cause to associate item with criminal activity; and probable cause is not measured by a "more likely true than false" level of certitude, but by a commonsense, nontechnical standard of reasonable cause to believe).

In *Dickerson*, the Supreme Court found the rationale underlying the plain view doctrine applicable by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. The Court reasoned:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Minnesota v. Dickerson, supra*, 508 U.S. at 375–76, 113 S.Ct. at 2137. In the case before it, the Court held, the crack cocaine retrieved from the suspect's pocket was not admissible under the plain feel doctrine because the police officer had determined that the lump was contraband only after squeezing, sliding, and otherwise manipulating the contents of the defendant's pocket. Thus, the incriminating character of the object was not "immediately apparent."

Although we are aware of no Colorado appellate opinion that has expressly recognized or applied the *Dickerson* plain feel doctrine, we note that Colorado cases decided both before and after *Dickerson* have upheld the admission of objects inadvertently discovered by touch during the course of a patdown search. *See People v. Hughes, supra* (film canister containing cocaine was lawfully removed from defendant's pocket when officer felt it during patdown search after defendant had made gesture suggesting he was trying to conceal something); *People v. Mascarenas*, 972 P.2d 717 (Colo.App.1998)(officers who felt hard object in defendant's sock during course of patdown search were justified in removing object to determine whether it was a weapon); *cf. People v. Ratcliff, supra* (officer who felt large solid object in defendant's pocket during patdown search had right to remove object to determine what it was, but exceeded permissible scope of search by opening lid of object—an opaque plastic vial—and examining its contents).

Here, as previously noted, the second deputy testified that, while patting down defendant's outer clothing, he felt an item in the front left pocket "consistent from previous dealings that felt like a pipe." He then reached in and retrieved a straight glass pipe, approximately four inches long, without a bowl. The deputy described the object as the type of pipe that would be used to smoke some kind of illegal substance.

The trial court found that the deputy's testimony established "that he felt as part of a patdown search what he believed to be a pipe that's commonly used for smoking methamphetamine" and that the nature of the item was "readily apparent when he touched it." Thus, the court concluded, seizure of the item was proper under *Minnesota v. Dickerson*.

■ We conclude that the trial court applied the proper legal standard in assessing the admissibility of the evidence and that its finding that the incriminating nature of the methamphetamine pipe was "readily apparent" to the deputy was not clearly erroneous

in light of the deputy's testimony. Unlike *Dickerson*, there was no evidence here that the deputy needed to squeeze or otherwise manipulate the contents of defendant's pocket in order to determine the incriminating character of the object. We also note that courts in other jurisdictions have concluded that drug pipes felt during the course of a patdown search for weapons may be recognizable as drug-related objects and therefore subject to warrantless seizure under *Dickerson*. *See Buffington v. State*, 229 Ga.App. 450, 494 S.E.2d 272 (1997); *State v. Lavigne*, 675 So.2d 771 (La.Ct.App.1996); *Garcia v. State*, 967 S.W.2d 902 (Tex.Crim.App.1998); *see also State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997)(under plain feel doctrine, officer could retrieve object felt during patdown search that he reasonably believed to be a marijuana pipe, even though object proved to be a spark plug).

Finally, we do not agree with defendant that the trial court's statement that the deputy "knew" what he felt was a crack pipe, made during a colloquy with counsel after the court had made its ruling, warrants reversal of the ruling. After the court had, at the prosecutor's request, made a specific finding that the nature of what the deputy felt was "readily apparent when [the deputy] touched it," some further discussion ensued. The court's reference to what the deputy "knew" was a final observation made in response to defense counsel's comment that the deputy "knew immediately that it wasn't a weapon." We do not view this response as a factual finding on which the court based its ruling.

■ Having lawfully retrieved the pipe from defendant's pocket, and having recognized the object as contraband, the deputy then had probable cause for the more thorough search that located the additional drugs and paraphernalia upon which the charges against defendant were based. *See People v. Hughes, supra*, 767 P.2d at 1206 ("The discovery of contraband during a lawful frisk can provide probable cause for a more thorough search.").

In sum, because the evidence was not obtained in violation of defendant's constitutional rights, the trial court properly denied his motion to suppress.

The judgment is affirmed.

Judge DAILEY and Judge RUSSEL concur.