2014 COA 112

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jeremy Wayne MARTIN, Defendant–Appellant.**

**Court of Appeals No. 13CA0277**

Colorado Court of Appeals, Div. II.

Announced August 28, 2014

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3) and

§ 24–51–1105, C.R.S.2013.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Brian S. Emeson, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Jeremy Wayne Martin, appeals the judgment of conviction entered on a

jury verdict finding him guilty of attempting to disarm a peace officer and resisting arrest. He asserts that the trial court erroneously denied his motion to suppress when it ruled that an investigatory stop and subsequent pat down were constitutional. We reject that contention. He additionally contends that the court erred in denying his request to testify, made after he had waived the right to do so and defense counsel had rested the case. We conclude that a remand is necessary concerning this contention. In doing so, we address an issue of first impression in this state and establish factors for trial courts to consider in determining whether to allow a defendant to testify after he has waived that right and after the defense has concluded its presentation of evidence.

## I. Background

¶ 2 According to testimony at the suppression hearing, at about 7:00 a.m., police received a call from a convenience store employee, stating that defendant had entered and remained in the store's restroom for approximately twenty minutes. The employees had knocked on the restroom door and had unsuccessfully requested defendant to come out.

¶ 3 When police arrived at the store, they spoke to two employees, who informed the officers that they wanted defendant removed from the premises. The officers knocked on the restroom door, announced that they were police officers, and requested defendant to exit the restroom. Defendant did not immediately respond, but eventually stated that he was using the bathroom and would be out shortly.

¶ 4 After about two minutes, defendant exited the restroom. He appeared agitated and nervous, and was reluctant to do or say anything in response to the officers, telling the officers that he could do whatever he wanted because he was on private property. Almost immediately, the officers ordered defendant to face the wall and put his hands behind his back so that they could conduct a pat down search. During the pat down, defendant's actions caused the officers to think he was attempting to flee. A struggle between defendant and the officers ensued during which defendant and one of the officers were injured.

¶ 5 The prosecution charged defendant with three counts of second degree assault on a peace officer, attempting to disarm a peace officer, resisting arrest, and third degree trespass. Before trial, defendant moved to suppress evidence, arguing that the officers had conducted an unconstitutional investigatory stop and subsequent pat down.

¶ 6 During the hearing on the motion, the prosecution presented evidence from one of the officers who had conducted the stop and pat down. The officer testified regarding the information he had received from the store employees and his personal observations and actions at the store. The officer stated that he had conducted the pat down for officer safety reasons. The trial court denied the motion.

¶ 7 Defendant proceeded to trial on the charges, asserting a general denial and self-defense, contending that the officers had used excessive force upon him. The prosecution dismissed the trespass charge mid-trial. After the prosecution had completed its case-in-chief, the trial court gave defendant an advisement on his right to testify pursuant to *People v. Curtis*, 681 P.2d 504 (Colo. 1984). Defendant waived his right to testify.

¶ 8 The defense then presented two witnesses. After concluding the second witness' testimony, defendant and his counsel conferred and counsel stated that they had decided they would not call a third witness, whose testimony they had initially expected to present. Counsel then rested the defense case and the prosecution released its potential rebuttal witness.

¶ 9 The parties and the court then engaged in a jury instruction conference and took a short recess. When they returned to court approximately two and a half hours after the defense had rested its case, defendant informed the court that he wanted to testify. Defendant's attorney stated that, "as far as defense counsel is concerned, I have rested," and that he did not think any additional witnesses would help the defense case. Counsel also stated that he was not seeking to call defendant, but acknowledged that the

decision to testify belonged to defendant, and that he should be allowed to make a further record about his desire to testify. Counsel also informed the court that defendant might be confused about his potential impeachment with two prior felony convictions.

¶ 10 The court engaged in an extensive discussion with defendant, inquired why he had changed his mind and now wished to testify, and asked defendant to make a brief offer of proof on the substance of his proffered testimony.

¶ 11 Defendant stated that he had changed his mind because he and his counsel had decided not to call a third witness and that his testimony became important because of this change in the evidence. He stated that he wanted to testify about the actions he had taken during the encounter with the police and his state of mind at the time to support his claim that the police had used excessive force, causing him to fear for his life and act in self-defense. He also indicated he would testify about the police officers' prior aggressive behavior in making other arrests and concerning complaints about their excessive use of force.

¶ 12 The prosecution objected to reopening the evidence because defendant had already waived his right to testify and because it had released its rebuttal witness.

¶ 13 The court focused on the proposed testimony involving the police officers, concluded it would likely be inadmissible coming from defendant, stated that enough testimony had already been presented to warrant giving a self-defense instruction to the jury, noted that defendant had agreed with his counsel that the third defense witness was not needed, and denied defendant's request.

¶ 14 This appeal followed.

## II. Motion to Suppress

¶ 15 Defendant asserts that the trial court erred by denying his motion to suppress evidence because the investigatory stop and subsequent pat down violated his Fourth Amendment right to be free from unreasonable searches and seizures. We conclude that the investigatory stop comported with the Fourth Amendment. Concerning the pat

down, we need not reach the issue of whether the officers violated defendant's Fourth Amendment rights because the evidence sought to be suppressed is admissible under *People v. Doke*, 171 P.3d 237, 239 (Colo. 2007). Hence, we affirm the trial court's determination on this issue, albeit on different grounds. *See Moody v. People*, 159 P.3d 611, 615 (Colo. 2007) (appellate court may affirm a trial court's ruling on grounds different from those employed by that court, as long as they are supported by the record); *People v. Chase*, 2013 COA 27, ¶ 17, —— P.3d —— (same).

### A. Investigatory Stop

#### 1. Standard of Review

¶ 16 When we review a motion to suppress, we defer to a trial court's findings of fact so long as they are supported by the record, and we review de novo the trial court's conclusions of law. *People v. Brunsting*, 2013 CO 55, ¶ 15, 307 P.3d 1073. "[A]n appeals court may only look to the suppression hearing in reviewing a lower court's ruling on such matters." *Moody*, 159 P.3d at 614.

#### 2. Law

¶ 17 The Fourth Amendment and Article II, Section 7 of the Colorado Constitution protect citizens from unreasonable searches and seizures. *Brunsting*, ¶ 16. "The determination of whether a search or seizure is reasonable depends on the reason for and the extent of the intrusion." *People v. Veren*, 140 P.3d 131, 135 (Colo. App. 2005).

¶ 18 Interactions between police and citizens fall into three categories: consensual encounters, investigatory stops, and arrests. *People v. Ealum*, 211 P.3d 48, 51 (Colo. 2009). Investigatory stops and arrests are seizures and thus implicate constitutional protections. *Id.*

¶ 19 "An investigatory stop is an encounter in which an officer briefly stops a suspicious person and makes reasonable inquiries to confirm or dispel these suspicions, such as determining an individual's identity or obtaining an explanation of a person's

behavior." *People v. Funez–Paiagua*, 2012 CO 37, ¶ 7, 276 P.3d 576.

 ¶ 20 Law enforcement officers do not need to have probable cause to arrest to conduct a constitutional investigatory stop. *People v. Rushdoony*, 97 P.3d 338, 342 (Colo. App. 2004). Rather, police officers need only have a "reasonable suspicion that criminal activity has occurred, is taking place, or is about to occur." *Funez–Paiagua*, ¶ 8. In addition, the purpose of the intrusion must be reasonable, and the scope and character of the intrusion must be reasonably related to its purpose. *Id.*

 ¶ 21 "Reasonable suspicion exists when facts known to the officer, taken together with rational inferences from those facts, create a reasonable and articulable suspicion of criminal activity which justifies an intrusion into the defendant's personal privacy at the time of the stop." *Id.* at ¶ 9. "In analyzing whether the facts created a reasonable suspicion of criminal activity that would justify the intrusion, a court must look at the totality of the circumstances known to the police officers at the time of the stop, along with any rational inferences from those circumstances." *Rushdoony*, 97 P.3d at 342. Although a defendant's actions after the stop was initiated cannot be used to justify the initial stop, "they may justify continuing the detention for further investigation." *Id.*

 ¶ 22 "Relevant circumstances that may be considered in assessing whether the police had an articulable and specific basis in fact for suspecting criminal activity include 'the lateness of the hour, the character of the area, the reaction to the presence of police, and whether a companion is being arrested.'" *Id.* at 342 (quoting *People v. Smith*, 13 P.3d 300, 306 (Colo. 2000)). "Objective observations of a person's 'nervous or unduly cautious behavior' may be considered as part of the totality of the circumstances." *People v. Pigford*, 17 P.3d 172, 176 (Colo. App. 2000) (quoting *People v. Ramirez*, 1 P.3d 223, 225–26 (Colo. App. 1999)). "While the presence of a single factor alone is generally insufficient to support an investigatory stop, the presence of some of these circumstances in combination may raise a reason-

able suspicion of criminal activity that justifies the intrusion." *Rushdoony*, 97 P.3d at 342 (citations omitted).

 ¶ 23 "Law enforcement officers may justifiably contact an unsuspicious person when other legitimate official reasons exist," such as rendering aid or conducting a welfare check. *People v. Berdahl*, 2012 COA 179, ¶ 19, 310 P.3d 230; *People v. Davis*, 39 Colo. App. 63, 65, 565 P.2d 1347, 1349 (1977).

### 3. Application

 ¶ 24 At the suppression hearing, the officer testified that he contacted defendant because of a call from the store's employees stating that defendant had remained in the store's restroom for over twenty minutes and the employees wanted him removed from the premises. The employees told the police that they had knocked on the door and tried to make defendant come out but he would not. Thus, the officer had reasonable grounds to initiate contact with defendant, both on the basis of conducting an inquiry into defendant's welfare and on reasonable suspicion that he was unlawfully trespassing on the property. *Funez–Paiagua*, ¶ 8; *Berdahl*, ¶ 19; *Davis*, 39 Colo.App. at 65, 565 P.2d at 1349; § 18–4–504(1), C.R.S. 2013 ("A person commits the crime of third degree criminal trespass if such person unlawfully . . . remains in or upon premises of another.").

¶ 25 We therefore conclude that the stop complied with constitutional requirements and defendant's actions and statements connected therewith were not subject to suppression. Hence, the trial court did not err in denying the motion to suppress evidence derived from the stop.

### B. Pat Down

 ¶ 26 We need not decide whether the police violated defendant's Fourth Amendment rights in conducting the pat down because defendant committed a new, subsequent crime, and therefore the evidence is admissible under *Doke*, 171 P.3d at 239.

¶ 27 In *Doke*, the supreme court held that in cases in which a defendant responds to an alleged Fourth Amendment violation with a

physical attack upon the officers making the illegal arrest or search, evidence of the new crime is admissible because evidence of post-entry assaults on police officers are outside the scope of the exclusionary rule. *Id.*; *see United States v. Bailey,* 691 F.2d 1009, 1017–18 (11 th Cir. 1982) (police may legally arrest a defendant for a new, distinct crime—including attempted flight from an unlawful stop—even if the new crime is in response to police misconduct and causally connected thereto); *People v. Smith,* 870 P.2d 617, 619 (Colo. App. 1994) (despite assuming officer's attempted stop of defendant's vehicle was an illegal seizure, evidence of the new crimes of eluding a police officer and criminal mischief was admissible).

¶ 28 Here, even if the pat down was unlawful (a resolution we do not reach), defendant's conduct of pulling away from the officers, attacking them, and resisting arrest, constituted new offenses. Thus, defendant may not rely on the exclusionary rule to suppress evidence of his words or actions. *People v. Barrus,* 232 P.3d 264, 270 (Colo. App. 2009).

¶ 29 Accordingly, the trial court did not err in denying defendant's motion to suppress evidence derived from the pat down.

### III. Request to Testify

¶ 30 Defendant contends that the trial court erred by denying his request to testify. We conclude that a remand is necessary for further proceedings.

### A. Standard of Review

¶ 31 "It is within the discretion of the trial court to permit either party to introduce evidence after closing his case." *People v. Waters,* 641 P.2d 292, 294 (Colo. App. 1981); *see United States v. Walker,* 772 F.2d 1172, 1177 (5th Cir. 1985) ("Generally, the reopening of a criminal case after the close of evidence lies within the sound discretion of the trial court." (internal quotation marks and alteration omitted)). Thus, we review for an abuse of discretion and will only disturb the court's ruling on appeal if its decision was manifestly arbitrary, unreasonable, or unfair. *People v. Cisneros,* 2014 COA 49, ¶ 103, —— P.3d ——.

### B. Law

¶ 32 Criminal defendants have a constitutional right to testify under the due process clauses of the United States and Colorado Constitutions. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25; *Moore v. People,* 2014 CO 8, ¶ 10, 318 P.3d 511 (citing *Curtis,* 681 P.2d at 509).

¶ 33 A trial court must ensure that a defendant makes a voluntary, knowing, and intelligent waiver of that right, should the defendant choose not to testify. *Curtis,* 681 P.2d at 515. But defendant here does not attack the validity of his waiver and the question presented does not implicate validity, nor does it directly raise the question of whether defendant was denied his constitutional right to testify. *See United States v. Byrd,* 403 F.3d 1278, 1282–83 (11th Cir. 2005) (noting that a criminal defendant who has knowingly and voluntarily waived the right to testify has not been "denied" that right).

¶ 34 Rather, defendant's contention requires us to determine the factors a trial court should consider when deciding whether to reopen the evidence in a criminal case that involves a defendant's request to testify after he has waived the right to do so and the defense case has been completed. We therefore first recognize that a court has discretion to allow withdrawal of a waiver, and a defendant has no unconditional right to revoke it:

> [E]ven waivers of fundamental trial rights are typically not subject to revocation as a matter of right. . . . If for no other reasons than scheduling and orderly administration of the proceedings, once a right has been effectively waived, that waiver can be revoked and the waived right reclaimed only in the discretion of the court.

*Reyes v. People,* 195 P.3d 662, 666 (Colo. 2008); see *People v. Woods,* 931 P.2d 530, 535 (Colo. App. 1996) (When a defendant has made a knowing, voluntary, and intelligent waiver of his right to counsel following a trial court's advisement on the record, "[i]t is within the trial court's discretion to evaluate the circumstances surrounding a defendant's

request to withdraw a valid waiver of counsel."); *see also People v. Wilson*, — P.3d ——, ——, 2011 WL 2474295 (Colo. App. No. 09CA1073, June 23, 2011) (*cert. granted* Nov. 5, 2012) (finding that once a defendant validly waives his right to counsel, he has no unconditional right to withdraw the waiver).

¶ 35 The parties do not cite, and we are not aware of, any Colorado cases dealing specifically with a criminal defendant who attempts to assert a right to testify after he has waived that right and has closed the evidence in his case. Thus, we look to cases outside Colorado for guidance on this issue. *See People in Interest of T.B.*, 12 P.3d 1221, 1223 (Colo. App. 2000).

¶ 36 Several federal circuit courts have addressed this precise issue. *See, e.g., Walker*, 772 F.2d at 1177 (citing *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir. 1982)). Those courts have established four factors that trial courts must consider when exercising their discretion to determine whether to reopen the evidence to allow a criminal defendant to testify. These factors are (1) the timeliness of the motion; (2) the character of the testimony; (3) the effect of granting the motion; and (4) the reasonableness of the party's explanation for failing to present the evidence in its case-in-chief. *See id.* Essentially, the trial court must balance the competing interests of the defendant's right to testify against the necessity of order and fairness in the proceedings. *See United States v. Peterson*, 233 F.3d 101, 106 (1st Cir. 2000) (citing *Walker* with approval and summarizing the factors as requiring a trial court to "consider whether the likely value of the defendant's testimony outweighs the potential for disruption or prejudice in the proceedings, and if so whether the defendant has a reasonable excuse for failing to present the testimony during his case-in-chief"). As the *Walker* court stated after articulating the four factors:

> The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not 'imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.'

*Walker*, 772 F.2d at 1177 (quoting *Thetford*, 676 F.2d at 182).

¶ 37 We are persuaded that these factors articulate part of an appropriate test for Colorado trial courts to employ when exercising their discretion to determine whether to allow revocation of the waiver and reopening of the evidence for a defendant to testify.

¶ 38 A survey of the federal cases provides additional guidance on what trial courts should consider.

### 1. Timeliness of the Motion

¶ 39 In *Walker*, 772 F.2d at 1177, the court determined that a delay between the defense's conclusion of its case on a Friday afternoon and the defendant's motion to reopen testimony so that he could testify on a Monday morning weighed against the defendant. Even so, it determined "the delay to be minor under all the circumstances." *Id.* The court concluded that the delay was not a significant factor because the trial would likely have carried over into Monday had the defendant decided to testify at the end of the defense case on Friday, the defendant had moved to reopen the evidence on the very next business day following the close of his case, and the defendant was prepared to testify immediately at the time he moved to reopen the evidence. *Id.* at 1178. Notably, counsel had not yet given closing arguments or submitted the case to the jury, *id.* at 1179, but it is unclear whether the parties had conferred regarding jury instructions.

¶ 40 At least three other courts analyzing this issue have cautioned that, generally, a criminal defendant *should* exercise his right to testify before evidence in the case has closed. *Byrd*, 403 F.3d at 1282 (noting that, although a criminal defendant has a constitutional right to testify, the right is not without limitation and sometimes must "bow to accommodate other legitimate interests in the criminal trial process" (internal quotations

omitted)); *see also United States v. Jones,* 880 F.2d 55, 59 (8th Cir. 1989) (holding that the trial court's failure to reopen the evidence to allow defendant to testify did not violate his constitutional rights because "[t]he right to testify must be exercised at the evidence-taking stage of trial"); *Peterson,* 233 F.3d at 106 ("[A] defendant does not have an unrestricted right to testify at any point during trial. Generally . . . he must do so before he rests his case."). The *Byrd* court stated that, "[t]hough the district court may reopen the evidence in order to allow a defendant to testify, its failure to do so usually will not constitute an abuse of discretion." *Byrd,* 403 F.3d at 1283.

¶ 41 But when considering the *Walker* factors, these courts still appear to agree that a slight delay weighs in favor of granting the motion. *Id.* at 1287 (a defendant's motion to reopen the evidence that is made the day after the evidence has closed and before closing arguments and jury instructions favors granting the motion); *Peterson,* 233 F.3d at 106 (A half-hour delay between the time defendant rested and defendant's motion to reopen the evidence in which nothing but a "very simple charging conference" took place is a relatively small delay posing a relatively small threat of disruption or prejudice.).

¶ 42 Thus, when analyzing the timeliness factor, courts should consider whether a jury instruction conference has taken place and whether the defendant was present for any such conference. A defendant's awareness of the instructions to be given to the jury, or the evidence necessary to obtain a particular instruction, may affect whether the defendant should be allowed to testify after hearing the colloquy between counsel and the trial court.

### 2. Character of the Testimony

¶ 43 The additional testimony that the defendant wishes to introduce upon reopening the evidence " 'should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused.' " *Walker,* 772 F.2d at 1177 (quoting *Thetford,* 676 F.2d at 182).

¶ 44 Obtaining a defendant's testimony in a criminal trial will generally weigh heavily in favor of granting a defendant's motion to reopen the evidence to testify. *See, e.g., People v. Mozee,* 723 P.2d 117, 125 (Colo. 1986) ("[T]he opportunity of the defendant to place himself and his own viewpoint before the trier of fact is necessary to legitimate the outcome of the trial."). The *Curtis* court stated that "the finder of fact will often deem the defendant's testimony compelling and conclusive because it is he—and only he—who offers direct evidence of his state of mind bearing on such intangibles as intent . . . [and] self-defense." 681 P.2d at 513. The defendant's testimony "gives the jury an immediate and visible impression of him as a person, which may color their view of the entire case against him" and "when a defendant wishes to speak, whatever the consequences to his case, it is fundamentally wrong to allow his conviction by a jury that has never heard the sound of his voice." *Id.* (internal quotation marks omitted); *see also Byrd,* 403 F.3d at 1287 (stating that "because it was the defendant himself who would have testified, we must consider the character of the testimony to have been of inherent significance" (internal quotation marks omitted)). A defendant's testimony "in his own defense is of . . . inherent significance" because the testimony "would be of particular interest to the fact finder." *Walker,* 772 F.2d at 1179. "Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance." *Id.*

¶ 45 Even so, a defendant should be called upon to make a formal and timely proffer of the content of the proposed testimony, and a failure to do so should weigh against granting the motion to reopen, except under circumstances where the content of the testimony is obvious. *Id.* Even a criminal defendant's own testimony may be "of little value" where the defendant gives hardly any indication of what he wishes to testify about. *Peterson,* 233 F.3d at 107. And where the presumption of significant value in a defendant's testimony is rebutted by an indication that the defendant intends to com-

mit perjury on the stand, that circumstance would certainly weigh against allowing the testimony. *Id.* Whether the testimony will be duplicative of other witness testimony or whether it consists of entirely new evidence should also factor into the court's analysis. *Walker,* 772 F.2d at 1179.

### 3. Effect of Granting the Motion to Reopen the Evidence

¶ 46 " 'The belated receipt of such testimony should not "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." ' " *Id.* at 1177 (quoting *Thetford,* 676 F.2d at 182). The *Walker* court noted that if the testimony is presented before closing arguments and jury instructions have been delivered, the testimony would appear in the orderly flow of defense testimony and cause minimal disruption to the proceedings. *Id.* at 1180. But after telling the jury to expect closing arguments following a short recess, reopening the evidence could disrupt the proceedings by potentially confusing the jurors. *Peterson,* 233 F.3d at 107 (noting also an ethical conflict of counsel who stated that he would not be able to participate in an examination of his client if defendant were permitted to testify; such a circumstance could cause further disruption in the proceedings).

¶ 47 Whether the prosecution has released any potential rebuttal witnesses, or whether any such witnesses have become unavailable since the defense rested its case, are factors to consider when assessing any potential prejudice to the prosecution. *Byrd,* 403 F.3d at 1287. This factor weighs against granting the motion when the government has already released its rebuttal witnesses. *Id.* (stating that under the particular circumstances of this case it would have been untenable "to allow [defendant] to wait until the government's witnesses had been released and then take the stand and say whatever he want[ed] to without much fear of anybody being around to rebut it." (internal quotation marks omitted)); *Walker,* 772 F.2d at 1180.

¶ 48 In addition, whether the prosecution has already presented rebuttal witnesses following the close of the defendant's evidence may be important in the analysis of prejudice to the prosecution. *Byrd,* 403 F.3d at 1287 (noting prejudice to the government if a defendant is allowed to testify after hearing the substance of the government's rebuttal evidence; this weighs strongly against granting the motion); *Walker,* 772 F.2d at 1180.

¶ 49 Trial courts should also consider whether granting the motion would cause any scheduling conflicts for the court's own docket that may have arisen from the court's reliance on the defendant's previous decision to rest his case. *Walker,* 772 F.2d at 1182.

¶ 50 Additionally, the court may consider any potential prejudice to the defendant in denying the motion, including any additional emphasis that the denial might place on the jury's impression of the defendant's failure to testify. *Id.* at 1183 (noting additional prejudice to defendant in denying his untimely request to testify when defense counsel had stated in opening statement that defendant would take the stand and rebut the prosecution's assertions against him).

### 4. Reasonableness of the Moving Party's Explanation

¶ 51 If a defendant appears to have moved to reopen the evidence solely for the purposes of delaying the proceedings, gaining a strategic advantage over the prosecution, or having the last word on surrebuttal, this factor weighs against granting the defendant's motion. *Id.* at 1184. Also, a defendant who offers no explanation but seems to have merely "changed his mind" weighs heavily against granting the motion. *Byrd,* 403 F.3d at 1288 (noting that a valid explanation is an important factor and stating that "[w]e cannot foresee how a district court could abuse its discretion by refusing to reopen the evidence to allow a defendant to testify where the defendant has given no valid reason for not testifying at the proper time"); *Peterson,* 233 F.3d at 107 (defendant's lack of any explanation, let alone a reasonable one, weighs against granting the motion).

¶ 52 But if the motion is supported by a seemingly bona fide and reasonable excuse, including an emotional inability to take the stand at the time of the initial waiver that has since been resolved, this factor would weigh in favor of granting the motion. *Walker*, 772 F.2d at 1184. Even so, the excuse of initial emotional difficulty with testifying would not "alone suffice to carry the day" in most instances. *Id.* at 1185.

### 5. Circumstances of the *Curtis* Advisement and Initial Waiver

¶ 53 In addition to the four articulated factors, courts should also consider any additional relevant circumstances, which could include the timing of the *Curtis* advisement and the defendant's initial waiver. *See Byrd,* 403 F.3d at 1282–83 (indicating that a defendant's knowing and voluntary waiver of the right to testify weighs against granting the motion to reopen evidence, and that a defendant who waives the right has not been "denied" the right to testify in his own behalf).

¶ 54 The court should consider whether the advisement and waiver occurred at the beginning of the defense case, sometime during the presentation of defense evidence, or after all other defense witnesses have testified. An advisement and waiver that occur earlier in the defense case could weigh in favor of granting a defendant's motion to reopen the evidence because the defendant made his decision whether to testify before having the opportunity to fully evaluate the strengths and weaknesses of the defense case. *See Brooks v. Tennessee,* 406 U.S. 605, 611–12, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (a criminal defendant should have the opportunity to weigh the strengths of the defense evidence as it is presented at trial before deciding whether his or her own testimony is necessary or helpful to the case); *People v. Reed,* 216 P.3d 55, 58 (Colo. App. 2008) ("[A] defendant has the constitutional right to decide at what point during his or her defense he or she wishes to testify."); *cf. People v. Walden,* 224 P.3d 369, 376 (Colo. App. 2009) (trial court did not deny defendant his constitutional right to remain silent or his right to testify by requiring him to testify at a particular time rather than re-cessing for an entire afternoon when no other defense witnesses were available to testify).

¶ 55 Courts may also consider the details of the defendant's initial waiver of the right to testify. Primarily, the court should consider whether the defendant's initial waiver was unequivocal, or if he or she expressed any hesitation, concern, confusion, or other difficulty in making the decision to waive the right to testify.

¶ 56 Courts may also consider, as the *Walker* court appeared to do, whether the defendant has testified at all during the trial. *See Walker,* 772 F.2d at 1185. While it is obviously important for a criminal defendant to be given a fair opportunity to testify at trial, fairness in the proceedings does not require affording the defendant repeated and endless opportunities to take the stand. *See id.*

### 6. Attorney's Position

¶ 57 Finally, defense counsel's position regarding the defendant's request to reopen the evidence to testify should be considered. The court may note defense counsel's advocacy, or lack thereof, and may consider whether and at what point defense counsel has a duty to effectively advocate the defendant's position even if it is contrary to counsel's viewpoint.

### C. Application

¶ 58 Here, the court considered some, but not all, of the factors we have identified, not having the benefit of our present decision. In light of our specific adoption of these standards, we conclude that we should remand the case for the trial court to reconsider the issue. *See People v. Wiedemer,* 852 P.2d 424, 443 (Colo.1993). On such remand, the court should hold a hearing and allow the parties to make additional argument and present additional evidence on the motion. Even though defendant has already presented the reasons he wanted to testify and the content of his testimony, we conclude he should not be limited thereto in light of his counsel's failure to advocate on his behalf.

¶ 59 The court should then rule anew, making specific findings under the factors set

forth in this opinion. If the court determines that its initial ruling was correct, defendant's conviction stands affirmed, subject to his right to appeal. If the court determines that its initial ruling was incorrect, the court should grant defendant a new trial.

## IV. Conclusion

¶ 60 The order denying defendant's motion to suppress is affirmed. The case is remanded with directions to hold a hearing on defendant's motion to reopen the evidence to make additional findings and conclusions consistent with the standards set forth in this opinion.

JUDGE DAILEY and JUDGE BERGER concur.