23CA2140 Peo in Interest of JW 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2140
Arapahoe County District Court No. 21JD402
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of J.W.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Phillip J. Weiser, Attorney General, Jenna Baker, Assistant Attorney General Fellow, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1     J.W. appeals his adjudication of delinquency for possession of a handgun and a controlled substance.  He argues that the trial court erred by (1) denying his motion to suppress evidence and (2) admitting evidence absent a proper chain of custody.  We affirm.

## I.     Background

¶ 2     While working an overnight shift, Officer Thomas McClay saw a truck pull into a gas station around 2 a.m.  The driver — later identified as J.W., then a juvenile — got out of the truck and went inside the station.  Officer McClay ran the truck's license plate number and learned the plate was registered to a different vehicle.  At that point, J.W. left the store and headed toward the truck.

¶ 3     Officer McClay approached J.W. and asked if the truck was his.  After J.W. said it was, Officer McClay instructed J.W. to sit on the hood of his police car and asked, "Do you have any weapons on you man?"  When J.W. responded, "No," Officer McClay asked, "Mind if I check?"  J.W. said, "Yeah, I do got a weapon on me," and he spread his arms out and faced Officer McClay.  J.W. then added that "it's in my pocket" and "it's loaded."  Officer McClay frisked J.W. and removed a handgun from J.W.'s front hoodie pocket.

¶ 4    Officer McClay handcuffed J.W. and other officers arrived at the scene.  During a post-arrest search, J.W. said that he had drugs in his sock.  Testing confirmed that one of the items found in J.W.'s sock was LSD.

¶ 5    The prosecution filed a petition in delinquency charging J.W. with possession of a handgun by a juvenile and two counts of unlawful possession of a controlled substance.

¶ 6    Before trial, J.W. moved to suppress the gun and drugs found during the search, arguing that the evidence was "obtained as a result of an unlawful detention, search, seizure, [and] arrest."[1]  Though the case was assigned to a magistrate, a district court judge sitting for the magistrate conducted the suppression hearing.  At the hearing, Officer McClay testified and the prosecution introduced his body camera video.  The court denied the motion to suppress, concluding that officer safety and the surrounding circumstances supported the protective frisk.

---

[1] While J.W. also sought to suppress statements he made to the officers under *Miranda v. Arizona*, 384 U.S. 436 (1966), he does not reassert this claim on appeal.  We therefore don't consider it.  *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996).

¶ 7    After a bench trial, the magistrate adjudicated J.W. delinquent for possession of a handgun and one count of unlawful possession of a controlled substance (the prosecution dismissed the remaining possession charge during the trial).  The magistrate sentenced J.W. to nine months of supervised probation.

¶ 8    J.W. filed a petition in the district court seeking review of the suppression ruling and the "ultimately final order of adjudication." J.W., however, did not raise any evidentiary issues in his petition. On review, the district court denied the petition.  It reasoned that because a district court judge — not the magistrate — issued the suppression ruling, it had "no authority to overrule the judgment of another district court judge."  The district court concluded that "the appropriate remedy is a petition to the court of appeals."

## II.    Motion to Suppress

¶ 9    J.W. again challenges the suppression ruling.  He contends that because Officer McClay "lacked reasonable suspicion to believe J.W. was armed," the frisk exceeded the scope of the investigatory stop and the court erred by not suppressing the handgun.  We disagree.

## A. Legal Principles and Standard of Review

¶ 10 The United States and Colorado Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. But a police officer may conduct an investigatory stop if (1) there is a specific and articulable basis for suspecting criminal activity; (2) the purpose of the stop is reasonable; and (3) the scope and the character of the stop are reasonably related to its purpose. *People v. White*, 2023 CO 43, ¶ 32; *see* § 16-3-103(1), C.R.S. 2025. And if an officer has an articulable and objectively reasonable belief that a suspect is armed and dangerous, the officer may frisk the individual for officer safety. *People v. Johnson*, 2024 CO 47, ¶ 27.

¶ 11 Review of a trial court's suppression order presents a mixed question of law and fact. *People v. Trujillo-Tucson*, 2022 CO 31, ¶ 14. We defer to findings of fact if supported by the evidence, but we review the legal effect of those facts de novo. *Id.* We may independently review police bodycam video when, as here, no facts outside the recording control the suppression issue. *See id.* And we may affirm a suppression ruling on any grounds supported by the record. *People v. Stock*, 2017 CO 80, ¶ 13.

## B. The Frisk Was Reasonable

¶ 12    J.W. does not dispute that Officer McClay had reasonable suspicion to conduct an investigatory stop related to the mismatched license plate. J.W. instead argues that Officer McClay was not authorized to frisk him for weapons "without a particularized suspicion that J.W. was armed and dangerous." Thus, he maintains that the gun should have been suppressed.

¶ 13    But J.W.'s argument presupposes that Officer McClay simply stopped and frisked J.W. That's not what happened. Rather, at the outset of the stop, Officer McClay asked J.W. if he had any weapons. When J.W. said "[n]o," Officer McClay asked J.W. if he could check. J.W. agreed, saying "[y]eah" and then immediately admitted he had a loaded weapon. Only at this point — *after* J.W. admitted that he was armed — did Officer McClay frisk J.W. for weapons. Once J.W. admitted that he had a loaded weapon, Officer McClay had reasonable suspicion that J.W. was armed and could be dangerous. *See Johnson,* ¶ 27. The protective frisk was therefore not unreasonable. *See Terry v. Ohio,* 392 U.S. 1, 30-31 (1968); *see also People v. Rushdoony,* 97 P.3d 338, 344 (Colo. App. 2004) ("[W]e decline to disturb the trial court's ruling that

5

[defendant saying he had a knife in response to officer question] was sufficient to allow the deputy to proceed with a patdown search for weapons.").

¶ 14    We disagree with J.W. that he "only admitted to having a weapon *after* McClay expressed an intent to search him."  Review of the bodycam video confirms that Officer McClay did not say he *intended* to search J.W.  Rather, he asked J.W., "Mind if I check" for weapons.  And Officer McClay did not initiate a frisk before J.W. answered the question and admitted that he had a weapon.  Thus, Officer McClay's request to check for weapons ("Mind if I check?") did not "functionally" initiate the search, as J.W. asserts.

¶ 15    We are equally unpersuaded by J.W.'s contention that, by asking about weapons, Officer McClay impermissibly exceeded the scope of the stop.  "[O]ff-topic questioning is permissible so long as it does not measurably extend the investigatory stop."  *People v. Ashford*, 2020 CO 16, ¶ 17; *see also Muehler v. Mena*, 544 U.S. 93, 101 (2005) (finding that officers didn't need reasonable suspicion for unrelated questioning about immigration status that didn't prolong the detention).  The bodycam video confirms that Officer McClay asked about weapons within seconds of encountering J.W.

6

The weapons questions did not prolong — let alone "measurably extend" — the stop. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

¶ 16    Because we may affirm on any ground supported by the record and because we conclude that J.W.'s admission that he had a gun provided Officer McClay with reasonable suspicion to conduct a protective frisk, we needn't consider whether the court erred by concluding that officer safety and the surrounding circumstances supported the protective frisk.[2]

¶ 17    We therefore affirm the order denying the motion to suppress, albeit on different grounds than the trial court.

---

[2] While J.W. now also appears to raise additional arguments about the purpose of the stop and whether he consented to the frisk, he did not raise these arguments in his petition to the district court for review of the suppression ruling. We therefore do not consider them. *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (noting that, because a petition for review of a magistrate's ruling is a prerequisite to an appeal, a party is required to present an issue in a petition for review before we may consider it on appeal).

## III.    Drug Evidence

¶ 18    J.W. also claims that the magistrate presiding over his trial erred by admitting drug evidence without proper authentication. Because this issue is unpreserved, we do not consider it.[3]

¶ 19    A petition for district court review of a magistrate's order is a prerequisite to an appeal.  § 19-1-108(5.5), C.R.S. 2025; *see People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006).  If a petition for review doesn't raise a particular issue, the district court never has an opportunity to correct any magistrate error, and we may not consider the issue for the first time on appeal.  *K.L-P.*, 148 P.3d at 403.  And because juvenile justice proceedings are civil in nature, *In re People in Interest of A.T.C.*, 2023 CO 19, ¶ 20, criminal plain error review does not apply, *see People in Interest of M.B.*, 2020 COA 13, ¶¶ 18-19 (declining to apply criminal plain error review for unpreserved issues in a juvenile proceeding and determining it is only necessary in rare civil cases "to avert unequivocal and manifest injustice" (citation omitted)).

---

[3] Though the People agree that J.W. preserved this issue, "an appellate court has an independent, affirmative duty to determine whether a claim is preserved." *People v. Tallent,* 2021 CO 68, ¶ 11.

¶ 20　　Since J.W. did not raise this evidentiary argument in his petition for review of the adjudication order, we do not review it.

## IV.　Disposition

¶ 21　　We affirm the adjudication.

JUDGE LIPINSKY and JUDGE KUHN concur.